SHAVALIER v. GRAND RAPIDS BARK & LUMBER CO.

PRINCIPAL AND AGENT—CORPORATIONS—ACTS OF OFFICERS.

Where, in an action against a corporation to recover on trans-
actions had with its vice-president, there was no evidence
that defendant had ever authorized such officer to engage
in any of the transactions out of which the claim grew,
or had ever been benefited by them, or, after knowledge
of them, had ever ratified his action, the corporation could
not be charged with the indebtedness.

Error to Newaygo; Palmer, J. Submitted April 4,
1901. Decided September 25, 1901.

*Assumpsit* by James Shavalier against the Grand
Rapids Bark & Lumber Company for money had and
received. From a judgment for plaintiff, defendant
brings error. Reversed.

*Henry B. Fallass* (*A. G. Day*, of counsel), for appel-
lant.

*George Luton*, for appellee.

MOORE, J. The plaintiff lives in Newaygo county, and
was engaged in making and selling railroad ties and lum-
ber. The defendant is a corporation, with its office in
Grand Rapids, Mich. Its business was buying and sell-
ing railroad ties and lumber. Its officers were William
A. Phelps, president, Charles F. Young, vice-president,
Charles A. Phelps, secretary and treasurer. Josie A.
Young, the wife of Charles F. Young, and the sister of
William A. Phelps, was a stockholder in the company.
Charles F. Young was the active man in looking after
the business in Newaygo county. The plaintiff sold and
delivered ties and lumber to the defendant to the amount
of more than $10,000. The dealings between the parties
commenced as early as 1895. It is agreed that a full set-

tĺement was had in March, 1897, and it is not sought to go into the transactions between the parties prior to that date.

In March, 1899, plaintiff gave the following receipt:

"GRANT, MICH., March 20, 1899.

" This article is my receipt in full to the G. R. Bark & Lumber Co. and C. F. Young to date for all demands of every kind and nature, and I am to deliver on car at Grant, on or before March 22nd, 14;000 feet of No. 1 tamarack piece stuff; I this day having been paid for the same in the Grand Rapids Bark & Lumber Co.'s settlement with me, this receipt covering the delivery of the same.

"JAMES SHAVALIER."

In May, 1899, he gave the following receipt:

"GRANT HOUSE.   May 2nd, 1899.

"PAY ROLL JAMES SHAVALIER.

"GRANT, MICH., May 2nd, 1899.

" James Longcore, amount, $23.90; William Longcore, $11.95; Earl Finchman, amount, $4.26; Ed. Schick, amount, $21.00; T. Ashley, amount, $14.74; C. L. Disart, $5.30; brought down, $81.15.

" The above is amount of labor due in full to date.   Received this day from Jorgensen & Hemingsen $17.73, and check 4291, for $63.42, to pay above; total, $81.15,— in payment of labor claims to date.   Also check 4290, for $80.00, in full settlement of Rice-Lake job, and all claims of every and any nature to date, including the lumber and ties now at Grant.

"J. SHAVALIER."

There have been no business transactions between the parties since the last receipt was given.   It is the claim of plaintiff that, when these receipts were given, he supposed credit had been given him for certain items for which he was entitled to credit, and that he was so informed by Mr. Young, but that the items were not in fact credited to him.   It is the claim of defendant that statements were rendered from time to time to Mr. Shavalier, that he was credited with all he was entitled to have credited, that defendant owes him nothing, and the jury should have

been so instructed. The judge submitted the case to the jury. A verdict was rendered in favor of the plaintiff. The case is brought here by writ of error.

The items for which plaintiff makes claim are: Upon the Brower mill, $200; timber sold to Abrahams, $300; Jorgensen & Hemingsen bill, $245.77; goods had by Young in Grand Rapids, $55.03. The defendant claims that these items all relate to transactions about which it had no knowledge whatever; that they were transactions between plaintiff and Charles F. Young as an individual. Mr. Young makes the same claim, and says that, in his individual dealings with the plaintiff, he gave him all proper credits, and that plaintiff has been fully paid.

As to the first item, it is the claim of plaintiff that he sold a portable mill to defendant, which it afterwards sold; and that he should have been credited $200 in the transaction. There was introduced in evidence the following:

"COURTRIGHT HOUSE.
"NEWAYGO, MICH., April 27, '97.
"C. F. YOUNG,
"Grand Rapids, Mich.:
"Please arrange," etc. "I hereby assign to you all my interest in the sawmill and engine sold to Carl Brower; everything, after paying claim of Chas. Fox & Company, to belong to you.
"JAMES SHAVALIER."

"CHARLES FOX.
"GRAND RAPIDS, MICH., March 8, 1900.
"Received from C. F. Young, May 29th, 1897, $50.00; on January 20, 1898, $37.00; and surrendered to him notes of Carl W. Brower covering engine and sawmill of James Shavalier.
[ Signed ] "CHARLES FOX."

It is the claim of defendant that it had nothing to do with this transaction. It is the claim of Mr. Young that he had fully settled the matter with the plaintiff.

As to the $300 claim for timber sold to Abrahams, it is the claim of plaintiff that he bought the timber from a number of 40's from one Veenboer for $200; that the con-

tract was made out in his name; that he at once assigned
it, as he supposed, to the defendant, as security for any
balance he might owe it; and with his consent the timber
from part of this land was sold to Abrahams for $500, and
he should have been credited $300 in the transaction.    The
record shows that in October, 1897, Mr. Veenboer made to
the plaintiff a land contract, which, after naming the
parties and describing the land, reads as follows:

" In consideration of the payment to me of $200.00, the
receipt of which is hereby acknowledged, I do for myself,
my heirs, and all parties interested therein, hereby sell,
assign, and transfer to James Shavalier, and to his heirs
and assigns, all the timber, standing and down, on the
above-described lands, which is over seven (7) inches in
diameter, with the right to himself, his heirs and assigns,
to go onto said lands, and to manufacture and remove
therefrom the said timber, at any time within two (2) years
from November 1st, 1897; it being understood and pro-
vided that the timber which is removed from section 16
shall be removed within one year from November 1st,
1897.
" Witness my hand and seal this 4th day of October,
A. D. 1897.
                                          " M. VEENBOER."

Indorsed on the back as follows:

                          " GRANT, MICH., Oct. 4th, 1897.
" For a valuable consideration, the receipt of which is
hereby acknowledged, I hereby assign all my rights and
title to the within timber to Josie A. Young.
                                     " JAMES SHAVALIER."

The $200 was paid to Mr. Veenboer with a check given
by Mrs. Young.    Mr. Shavalier never put a dollar into
the transaction.    The record also shows that afterwards
Mr. Shavalier negotiated a sale of timber from some of
this land to Mr. Abrahams for $500, and represented to
him the land belonged to Mr. Young.    Shavalier was paid
$50 commission for his part in the transaction by Abra-
hams.    It is the claim of defendant that it had nothing to
do with this transaction.    It is the claim of Mr. Young
that he bought the timber of Veenboer, and sold part of it

to Mr. Abrahams.   The record shows the defendant paid plaintiff 14 and 15 cents apiece for the ties.   Mr. Young claims that his purpose in buying the timber was partly to supply the timber to enable Shavalier to make ties, and that, while defendant was to pay 14 and 15 cents apiece for the ties, the plaintiff was to receive in fact, by virtue of an agreement between himself and Young, but 11 and 12 cents, and that the other 3 cents was to be paid to Young for the timber which went into each tie, and that defendant company had no knowledge of this arrangement.   The plaintiff admits he was to be paid but 11 and 12 cents for the ties originally, but that he was paid more because he could not afford them for that price.   As bearing upon the question, the following paper, which Mr. Shavalier testified he executed and delivered to Mr. Young, was introduced in evidence:

"Hotel Butler.
"Newaygo, Mich., May 31, 1898.

" In connection with my agreement to cut the logs, and manufacture into ties, and deliver at railroad track for the G. R. Bark & Lumber Co., the tamarack timber from swamp land, known as 'Rice-Lake Job,' at 11 cents per tie, and to pay $1.00 per thousand feet stumpage for the logs which I remove or have removed from said swamp land and manufactured into lumber, I further agree to take from the stump and lands, manufacture, and deliver in the cross-pile at Grant, the elm and ash standing and down on the northwest quarter of the southwest quarter of section 10, township of Grant, together with the elm and ash known as the 'Dr. Veenboer Lands,' and to deliver such elm or ash lumber in cross-piles at Grant, at not to exceed $5 per thousand feet, mill culls out, in addition to the cost of saw bill, and delivered in cross-pile in Grant.   I am to have one-half of the net profit from the sales of said hardwood lumber.

" James Shavalier."

Mr. Young claimed this agreement was carried out in full.

As to the item of $245.77, the record shows that, about the time the parties began to deal together, Mr. Young

introduced the plaintiff to the firm of Jorgensen & Hemingsen, and arranged that they should sell supplies to the plaintiff at 10 per cent. discount; that monthly statements should be made, and that defendant would pay the bills, and charge the amount paid to the plaintiff. These bills aggregated nearly $4,000. The first monthly statement was sent to the office of the defendant. Mr. Young then requested that no more of them be sent to the office, but that he would call for them. The account had not been opened very long before Mr. Young began to take home with him chickens, butter, eggs, and other family supplies, which amounted in the aggregate to $245.77, which were charged to the plaintiff. After the first month, Mr. Young called for the bills, and his claim is that he and the plaintiff went over them carefully, checking off the items, and that he gave Mr. Shavalier credit on his personal account for all the items which he personally had. Mr. Shavalier admits that many of these statements were shown him, and some of them bear his check marks. As bearing upon the same question, it was shown that Mr. Shavalier opened in his own books an account with "C. F. Young, Personal," in which some of these items appear.

The other item was of substantially the same character as that of Jorgensen & Hemingsen. It is the claim of Mr. Young that he gave the plaintiff credit for all these items, and that he has been paid in full.

We do not deem it necessary to discuss all of the many assignments of error. We shall not discuss the effect of giving the two receipts, or whether it was error to allow plaintiff to show by parol that, when he assigned the Veenboer contract to Mrs. Young absolutely, he supposed he was assigning it to the defendant as security, nor whether he could contradict by parol the written assignment of the mill contract to Young, and show he sold it to defendant. As before stated, Mr. Young testified these items were all his individual dealings with the plaintiff. The other officers of the corporation testified they were not

the business of the corporation.    The record is entirely barren of any competent testimony that defendant had authorized Mr. Young to engage in any of the transactions out of which these items grew, or that it had ever been benefited by them, or, after knowledge of them, it had ever ratified his action.    There is not nearly the proof tending to show authority upon his part to act for defendant that was shown in the case of *Bond* v. *Railroad Co.*, 62 Mich. 643 ( 29 N. W. 482, 4 Am. St. Rep. 885), where the court said a verdict should have been directed.    If there is any occasion for any litigation in relation to these transactions on the part of Mr. Shavalier, it is not with the defendant.    The court should have granted the motion of the attorney for the defendant to direct a verdict in its favor.

Judgment is reversed, and new trial ordered.

The other Justices concurred.