CLARK, MASON & CO. *v.* PARKER, WEBB & CO.

CORPORATIONS—ULTRA VIRES—GAMBLING TRANSACTIONS.

Plaintiff and defendant were both corporations organized to deal in meats and provisions.    A member of plaintiff corporation arranged with defendant's manager to buy lard through the latter's commission dealers; defendant advancing money to make the deals, for which it was subsequently reimbursed; the account being carried on its books in the name of the member of plaintiff who originally made the arrangement. Defendant's directors never authorized its manager to transact such business, a majority of them did not know of it, and defendant received no benefit therefrom.    *Held,* that the transaction was *ultra vires* as to defendant, so that plaintiff could not recover back the money which had passed through defendant's hands, either on the ground that the dealings were the personal transactions of the acting member, in which the money of plaintiff was used under such circumstances as to charge defendant with notice of the fact, or on the ground that they were gambling transactions.

Error to Wayne; Brooke, J. Submitted January 29, 1902. (Docket No. 93.) Decided June 24, 1902.

*Assumpsit* by Clark, Mason & Company against Parker, Webb & Company for money had and received. From a judgment for defendant, plaintiff brings error. Affirmed.

*Bowen, Douglas & Whiting* (*Herbert R. Clark*, of counsel), for appellant.

*Chamberlain & Guise* (*Alfred Lucking*, of counsel), for appellee.

MONTGOMERY, J. The plaintiff is a Michigan corporation, with headquarters at Adrian, incorporated for the purpose of "the buying, selling, and merchandising of cheese, all kinds of meats, fruits, vegetables, canned goods, groceries, oysters, and all kinds of fish and provisions." The defendant is likewise a Michigan corporation, incorporated for " the buying and selling of live stock, the slaughtering, packing, and selling the same, both at wholesale and retail, the rendering of fats, and dealing in all kinds of meats, both salt and fresh, and pork and beef products, and transacting all business incidental thereto."

Beginning in 1897, an account appeared upon the books of defendant company headed "Ira Z. Mason," and was opened under the following circumstances, as testified to by Mr. Craig, defendant's manager:

"In 1897 Mason was at our office at one time, and he wanted to buy some lard in Chicago, and said that he wasn't acquainted with any commission firm over there, and wanted to know if we could accommodate him by buying some goods for them; and I explained to him how the commissions were. I told him that they would buy and sell for 6.25; that they usually charged 6.25 for buying, and 6.25 for selling. I told him I could save him a little that way, and that we would be glad to accommodate him. Nothing was said at that time about the name in which the account should be carried. I told him my

brokers over in Chicago were Hately Bros. * * * We sent money for Clark, Mason & Co. before they gave it to us, because we had guaranteed to Hately Bros. the account of A. Hayward, our traveling salesman, in whose name these deals were made; and therefore we were responsible, in a way, for that money, and we had to send it as soon as called for. I talked with Mason about it. I had told him previously that when we were called on for money he must send it as soon as it was called for, and he didn't always do it. * * * When the $200 came in, I didn't know exactly what to do. I had to make some entry to keep a record of it. I didn't want to put it into Clark, Mason & Co.'s 30-day business, and so, as a memorandum, I put it right under their account, and opened it, 'Account of Ira Z. Mason,' so as not to get it mixed up with the regular 30-day business; and I gave them credit for the $200 there, and charged them with the $500 sent to Chicago. There was no credit business in Chicago; it was all cash. I remitted to Chicago all the moneys that were sent from Adrian,—to Hately Bros. * * * Mr. Hayward was one of our traveling salesmen, and we had guaranteed his account with Hately; and we didn't want to guarantee Clark, Mason & Co.'s account, and we didn't want to have it mixed up with our own business. We were dealing with Hately, and we put it that way so as to keep it separate and distinct, so that it could be traced,— not mixed up with our business. Mr. Mason was informed of that. He knew it was in the name of Hayward when he came in the next time."

This commission business continued during the years 1897 and 1898, and until November, 1899. During a considerable portion of this period remittances were made by the checks of Clark, Mason & Co. There was testimony tending to show that the transaction was a transaction on behalf of Mason, although the defendant's testimony controverted this; and the plaintiff sued to recover upon the grounds: *First*, that the dealings were the personal transactions of Mason; that, without authority to do so, he used the plaintiff's money; and that the fact that checks were drawn on the bank account of Clark, Mason & Co. was sufficient notice to put the defendant upon inquiry; and, *second*, that, if the transactions were not the personal

transactions of Mason, they were gambling transactions, in which Clark, Mason & Co. did not, nor did Parker, Webb & Co., intend any actual sale or purchase, nor any actual receiving or delivery, of the lard, but both intended that accounts should be settled by the payment of differences, according as the market price of lard might rise or fall. The court below left it to the jury to determine whether or not these transactions were those of Mason individually, or of Clark, Mason & Co.; but complaint is made of the instructions given to the jury as to the plaintiff's rights in case the jury should find that the deals were the personal deals of Mason.

The defendant, in this court, contends that in no view of the case was the plaintiff entitled to recover against the defendant. A careful examination of the record leads us to the conclusion that this contention is sound. The testimony of the directors is that no such business as that attempted to be transacted was authorized by the board of directors of Parker, Webb & Co. It is also in evidence, and, so far as we discover, undisputed, that a majority of the directors remained in ignorance of these transactions until after they were closed. It is to be noted that the plaintiff was not misled in any way 'by an appearance of authority on the part of those connected with the business. We think it is manifest that no authority in fact existed. The defendant company was not organized to act as a gratuitous agent. It appears that the attempted services which Mr. Craig undertook to render for Mason, or for the plaintiff, were entirely gratuitous, and rendered as an accommodation. Neither the articles of incorporation nor any authority of the board of directors conferred upon him this power. The company was the mere conduit through which these funds were transmitted. No benefit whatever inured to the defendant company. While, if the money had remained in the hands of defendant, it might be recoverable, the mere fact that it passed through its hands does not entitle the plaintiff to an action for money had and received. See *Wixson* v. *Haywood*, 33 Mich. 68.

The case presents a very different aspect than it would had the dealings been for the ostensible benefit of the defendant corporation. But the party representing the plaintiff, or acting on its behalf, was in no way misled by any apparent authority of Craig. He knew that the transaction was not engaged in in the interest or on behalf of the defendant company, or, at most, with any idea of profit to the company, but that it was solely for the benefit of either himself or the corporation which he represented. Under such circumstances, the same considerations which would deny to defendant the right to assert that the plaintiff's agent, Mason, was acting within the line of his authority, entitled the defendant to assert that Craig was acting without authority from his board of directors. See *Shavalier* v. *Lumber Co.*, 128 Mich. 230 (87 N. W. 212); *Merchants' Nat. Bank* v. *Detroit Knitting & Corset Works*, 68 Mich. 620 (36 N. W. 696); *Rice* v. *Peninsular Club*, 52 Mich. 87 (17 N. W. 708); 7 Am. & Eng. Enc. Law (2d Ed.), 790, and cases cited. We think the case should have been determined upon the ground that the contract was wholly *ultra vires*, so far as the defendant corporation was concerned, and that, as no benefit accrued to that company, no recovery should be had.

Judgment affirmed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.