## JOHN N. CARROLL, JR., *vs.* THE MANGANESE STEEL SAFE CO.

*Action to Recover Commissions for Effecting Sale—Authority of Agent of Corporation to Employ Sub-Agent—Ratification—Estoppel by Silence.*

It was agreed between the plaintiff and the sales agent of a manufacturing company that if plaintiff aided the agent in obtaining contracts, the agent would pay him some compensation therefor. Plaintiff did materially assist the agent in effecting a certain sale, and brought this action against the company to recover commissions or compensation therefor. *Held,* that the plaintiff is not entitled to recover against this defendant unless he also proves that the agent, in making the agreement with him, had express or implied authority from the defendant to do so, or that the agreement was subsequently ratified by the defendant, or its benefits accepted with knowledge of these facts; also that there is no legally sufficient evidence of such authority on the part of the agent or ratification of his acts by the defendant.

The supervising engineer of a manufacturing company, who also acts as a salesman, has no implied authority to bind the company by employing sub-agents.

The fact that a principal ratified the act of his agent in employing a sub-agent in one transaction does not justify the inference that the agent was authorized to employ the sub-agent in a different transaction a year afterwards.

There is no presumption that the secretary of a corporation has the power to appoint agents or to ratify appointments made without authority.

An agent promised compensation to the plaintiff if the latter aided in effecting sales. Plaintiff introduced the agent to a purchaser, who refused to pay the price demanded and offered a smaller sum. The agent told the plaintiff that if the sale were made for the sum offered there would be no commissions

for either of them. To this statement plaintiff made no reply. Afterwards a sale was made at the price offered. *Held,* that the plaintiff's silence under the circumstances estops him from claiming commissions.

*Decided June 30th, 1909.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*R. E. Lee Marshall,* for the appellant.

*Alfred Jenkins Shriver,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant sued the appellee, a foreign corporation, in the Superior Court of Baltimore City, for a commission on the sale of a steel bank vault. At the trial of the case in the Court below the presiding Judge granted the defendant's prayers instructing the jury to find a verdict in its favor for want of legally sufficient evidence to entitle the plaintiff to recover. Upon the verdict so rendered a judgment for the defendant for costs was entered from which this apeal was taken.

The evidence in the record on the part of the plaintiff is substantially as follows: During the year 1904 there was an active competition between companies engaged in building safes and vaults, to secure contracts for the erection of those structures in the new bank buildings erected after the great fire in Baltimore City. The appellee, which had its office in New York City and its factory in Plainfield, New Jersey, participated in that competition through the agency of its engineer and salesman William Lindgren who frequently visited Baltimore in that connection. Lindgren on one of

his visits to that City, in October, 1904, met on the street the appellant, whom he had previously known, and remarked, in the course of the conversation which ensued, that he was trying to secure the contract for constructing the safe deposit vault in the new building of the National Bank of Baltimore. Carroll stated that the cashier of that bank was an old friend of his and that he also knew many bankers and influential people in Baltimore and might be able to assist Lindgren in securing the contract. The latter replied, according to Carroll's testimony, "any business that you can get I will see that you are paid a liberal commission for." Carroll answered "that is all I expect." No rate of commission was mentioned then or at any other time.

Carroll went with Lindgren to see Mr. Wilcox the cashier of the bank, and spoke favorably of him and his company and expressed the hope that they might secure the contract. He also introduced him to architects and others interested in the erection of the Maryland Life Insurance Co.'s building and the Baltimore and Ohio Railroad Company's building and personally interviewed some of those persons in his interest. Neither the efforts of Lindgren nor Carroll nor of the two combined were of any avail and no contracts were secured for the appellee in connection with the construction or equipment of any of the buildings mentioned. During these efforts Lindgren sent to Carroll several copies of the "American Banker" containing favorable notices of the appellee and its system of constructing safes and other printed matter and samples of material, which were exhibited by the latter to the savings bank officials.

On December 8th, 1905, Carroll saw in the Baltimore Sun a descriptive notice of the new building then about to be erected by the Metropolitan Savings Bank. He went at once to see the president and one of the directors of that bank and called their attention to the system of safes and vaults constructed by the appellee and also exhibited the book of cuts and samples received from Lindgren and arranged for an interview between him and them. He then wrote to Lindgren

apprising him of what he had done and enclosing him a clipping from the Sun containing the description of the proposed Savings bank building. Lindgren responded to the letter by telegram and came promptly to Baltimore and opened negotiations with the Savings Bank people which ultimately resulted in the erection of the vault in their building by the appellee.

In the negotiations looking to the making of this contract the appellee demanded $16,000 for the construction of the vault but the Savings Bank would not agree to pay more than $13,000. The appellee finally came to the bank's terms, and a contract was made on June 8th, 1906, between the parties for the construction of the vault for $13,000. During the negotiation which led up to this contract, and before it was signed, Lindgren on several occasions said to Carroll that if the appellee had to put the price of the vault at so low a figure there would be no commission in it to either of them. To that statement Carroll replied, according to the testimony of Lindgren and the appellee's witness Geswein who was present at one of the times when it was made, "I understand that all right" or that "he understood this perfectly." Carroll testified as already mentioned that he said nothing but remained silent when Lindgren told him there would be no commission in it; and for the purpose of the present inquiry his evidence must be taken as true.

Lindgren also testified that he had no authority to employ agents or salesmen for the appellee and that he never employed Carroll as such; that the only arrangement he made with Carroll was a personal one with which the company had nothing to do. He said the arrangement was that Carroll who was a friend of his should keep him posted as to what was going on in Baltimore and introduce him to such persons as he might find it advantageous to know, and that if a sale resulted from the assistance thus rendered he "would personally make him *some remuneration*" out of his own pocket, but his testimony can be looked to, for the purpose of the

present inquiry, only to see how far it may be available to support the plaintiff's case. *Barabasz* v. *Kabat,* 91 Md. 53.

We regard the evidence to which we have referred as legally sufficient to go the jury to show that Carroll assisted Lindgren in securing for the appellee the contract from the Savings Bank in pursuance of an agreement between them that Lindgren would see that he should receive remuneration for his services in the nature of a commission. In order however to enable Carroll to recover against the appellee for his services it was necessary for him to prove also either that Lindgren, in making the agreement in respect to compensation, acted on behalf of the appellee with express or implied authority for that purpose, or that the agreement was subsequently adopted or ratified by the appellee or its fruits accepted with knowledge of the circumstances of their acquisition. Of those facts we agree with the learned Judge below the record fails to supply legally sufficient evidence.

There is no evidence in the record of express authority from the appellee to Lindgren to make any such agreement on its behalf. Nor do we think such authority is to be implied from the nature of his employment. He was the supervising engineer of the appellee, having his headquarters at its factory in Plainfield, New Jersey, and seems also to have acted as its salesman and solicitor. No authority to employ sub-agents is ordinarily incident to either of these two branches of service and in the absence of proof of special terms of employment none should be inferred.

If we inspect the record for evidence of an adoption or ratification by the appellee of the agreement between Lindgren and Carroll we find all of Carroll's communications having relation to it were addressed to Lindgren and with one exception all were answered by him individually although some of the answers were written upon the letter heads of the appellee. The one letter not answered by Lindgren personally was signed "Sidney L. Smith, Secretary Steel Safe Company" but it is dated January 4th, 1905, nearly a year before the negotiations with the Metropolitan Savings Bank

which form the subject of the present suit were begun, and on its face relates solely to an effort then being made to secure a contract from the National Bank of Baltimore. A memorandum following Smith's signature says: "Lindgren is knocked out with a bad cold," for the evident purpose of explaining why Smith and not Lindgren had answered Carroll's letter.

The contents of the letter plainly show that Smith, the secretary, knew that Carroll was relied on to secure to Lindgren a favorable hearing on behalf of the appellee before the board of directors of the Bank of Baltimore in the effort to get a contract from them. Nothing ever came of Carroll's efforts referred to in that letter, as the appellee did not get the contract from the Bank of Baltimore. Even if that letter amounted to such an acceptance of Carroll's services in that connection as to have entitled him to compensation under his agreement or otherwise, if the appellee had secured the contract from that bank, it, standing by itself, could hardly be construed as having a similar operation upon any services that may have been rendered by him a year thereafter in relation to another and different transaction. *Samuels* v. *Luckenbach,* 205 Pa. 428; 31 *Cyc.,* 1260; *Todd* v. *Bishop,* 136 Mass. 386.

Assuming that the character of Smith's letter was such as would have amounted to a ratification of the transaction to which it referred by one having authority to ratify, there is no evidence in the case that Smith, as secretary, had any such authority, nor is there any presumption that the secretary of a corporation has power either to appoint agents or to ratify appointments previously made without authority. *Clark and Marshall on Private Corps.,* Vol. 3, sec. 704; *A. & E. Encycl.* 861.

The only communication between Carroll and any of the officers of the appellee was in July, 1906, after the contract with the Metropolitan Savings Bank had been made, and consisted of a request made by Carroll to Mr. Smith, the secretary, for an appointment as special agent of the appellee

in Baltimore and vicinity, and a refusal of the request on the part of the appellee. The letter declining to make the appointment is signed in the name of the appellee by "Morris Underhill, Ast. Gen'l. Manager," and is the only communication to Carroll formally made on its behalf appearing in the record.

We may add that we also think that if the case had been sent to the jury the Court should have granted the defendant's first prayer, which asserted that Carroll was estopped from maintaining this suit by remaining silent, as he admits that he did, on the several occasions, before the signing of the contract with the Savings Bank, when Lindgren told him that if the appellee accepted the contract at the price named by the bank there would be no commission in the transaction for either of them. The doctrine of estoppel *in pais* by silence is well stated in 16 *Cyc.*, p. 681, as follows: "Estoppel by silence arises where a person who by force of circumstances is under a duty to another to speak refrains from so doing and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." The validity of estoppel *in pais* and the fact that it is available in law as well as in equity have been repeatedly recognized by this Court. *Albert* v. *Freas,* 103 Md. 583, 591; *Atlantic Coal Co.* v. *Md. Coal Co.,* 62 Md. 143; *Park Association* v. *Shartzer,* 83 Md. 10; *Roland Park Co.* v. *Hull,* 92 Md. 301.

The recent case of *Carmine* v. *Bowen,* 104 Md. 198, presents a forcible illustration of an estoppel by silence. A controversy there existed between a landlord and his tenant as to the latter's right to harvest his crops on the demised premises after the end of his term. The landlord, who denied the tenant's right, happened to come on the premises when the tenant was sowing seed. The tenant said to him: "I don't anticipate any trouble in the cutting of my crop," and the landlord made no reply. In holding that under those circumstaces he was estopped to deny the tenant's right to harvest the crop, we said, speaking through the late CHIEF JUDGE Mc-

SHERRY: "Where a man has been silent when in conscience he ought to have spoken he shall be debarred from speaking when conscience requires him to be silent   *   *   *   Silence is a species of conduct and constitutes an implied representation of the existence of the state of facts in question, and the estoppel is accordingly a species of estoppel by misrepresentation.   *   *   *   When the silence is of such a character and under such circumstances that it would become a fraud upon the other party to permit the party who has kept silent to deny what his silence has induced the other to believe and act upon it, it will operate as an estoppel."

The application of what we there said to the facts of the present case require us to hold that Carroll fatally estopped himself to assert his present claim by remaining silent when Lindgren told him that at the price at which the appellee could get the contract there would be no commission for either of them. His silence permitted Lindgren to go on and conclude a contract on behalf of the appellee, under circumstances when it is not reasonable to suppose he would have done so but for that silence, and Carroll cannot now be permitted to speak to the prejudice of the appellee whose agent was thus induced to act on its behalf.

For the reasons mentioned in this opinion the judgment appealed from must be affirmed.

*Judgment affirmed with costs.*