[No. 9640.   Department Two.   December 5, 1911.]

JAMES E. DEMPSEY, *Respondent*, v. UNITED WIRELESS TELEGRAPH COMPANY, *Appellant*.[1]

CORPORATIONS — REPRESENTATIONS — AUTHORITY OF AGENTS—EVIDENCE—SUFFICIENCY.  A general fiscal agent and a director of a company has no implied authority to employ brokers to sell stock of the corporation upon a commission; and in the absence of any evidence of authority or of the nature of the business of the company or his connection with it, it is not liable on his agreement to pay a broker's commission on stock sold, especially where it does not appear that the stock sold was the stock of the company.

[1]Reported in 119 Pac. 1.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 16, 1911, upon findings in favor of the plaintiff, in an action on contract, after a trial before the court without a jury.   Reversed.

*E. B. Palmer* and *Thos. M. Askren*, for appellant.

*McClure & McClure*, for appellants Trustees in Bankruptcy.

*William C. Keith*, for respondent.

MORRIS, J.—This is an action to recover commissions upon two sales of stock of the appellant.   Recovery was permitted upon one sale and denied as to the other, and the company appeals.

In November, 1909, respondent was employed by George H. Parker as an agent to solicit the sale of stock in the appellant company.   He saw one Fred Cavanaugh, residing near Kent, and endeavored to induce him to purchase.   He made several visits to Fred Cavanaugh, and was finally told by Fred Cavanaugh that he was favorably impressed, but that he was not in a position to buy stock, and would refer the matter to his father, then at San Jose, California. Fred Cavanaugh wrote to his father concerning the stock, sent him some literature issued by the company, and also a letter he had received from Parker, in which letter Parker strongly urged the purchase of this stock.   Fred Cavanaugh seems to have been his father's financial agent in many respects, but in this matter he wished his father to act upon his own responsibility.   After this communication to the father at San Jose, respondent took Fred Cavanaugh to the company's office at Seattle, and there had a talk with Parker in which Fred Cavanaugh repeated what he had told respondent, that he would do nothing upon his own responsibility, but would wait until he had heard from his father. Just before Christmas, respondent saw Fred Cavanaugh again, and was told that he had heard from his father, and

that the father thought it a good proposition, but had not advised him about the taking of any stock.

Nothing more is shown by the record until about June 1 M. L. Cavanaugh, the father of Fred Cavanaugh, returned to his home near Seattle, and walking into the office of the appellant, at Seattle, informed those in charge that he had purchased one hundred and ten shares of stock while in California, and wished to make some arrangements as to its transfer. When or from whom this stock was purchased does not appear. After M. L. Cavanaugh left the office, a Mr. Carr, another selling agent of appellant, was called in and instructed to call on M. L. Cavanaugh and endeavor to sell him additional stock. Carr had accompanied respondent on one or two of his visits to Fred Cavanaugh, and it had been arranged between them, if they succeeded in making a sale, they would divide the commission.

At the time M. L. Cavanaugh returned to Seattle with this stock, Fred did not know that he had purchased any stock while in California, nor did he know of his return until some days afterwards. Carr called on M. L. Cavanaugh, and finally induced him to purchase one hundred shares of stock at $35 per share, providing he could trade in some notes and mortgages for the purchase price, which was consented to and the sale made. Thereafter respondent demanded a commission on both sales, and being refused, brought this action, in which the court denied him any commission upon the purchase in California, but awarded him judgment for the amount of his commission upon the second sale. It might be added that he brought the action against both George H. Parker and the company. Parker was, however, dismissed in the court below.

The errors assigned are that it is not shown that Parker had any authority to bind the company, that respondent was not instrumental in procuring the last purchase, and that the stock sold was the stock of Parker. Unless the record shows authority on the part of Parker, the case must fail,

as all the transactions upon which recovery is based are had with either Parker or his agents. We have read the record carefully, and it is absolutely silent as to any authority Parker had to bind the company, to appoint agents, or to pay commissions for the sale of its stock. There is neither any express nor any implied authority shown, nor does it appear just what is the relation between Parker and the company. The only testimony in the record upon that question is this:

"Q. Now, this office of the company in Seattle was the main office on the Coast here, wasn't it? That is, the headquarters? A. Yes. Q. That is where all of the final business was transacted? A. I don't know what you mean by that. Q. Well, this was the head office for the Pacific Coast, headed by Mr. Parker? A. Yes, sir. Q. And he was the general agent of the Wireless Telegraph Company as well as one of the trustees of the company? A. He was the general fiscal agent of the company and one of the directors, I believe. Q. And he had the right and authority to sell stock? A. Why, I presume so. Q. And he had the right and authority to employ agents? A. Why, I believe so. I am not certain. I do not know anything about his authority."

This testimony was given on cross-examination by Mr. Martin, who seems to have been in charge of the Seattle office under George H. Parker. All that we can gather from it is that Parker was the general fiscal agent of the company, and one of its directors. Just what the duties of a general fiscal agent and a director are in this company does not appear, and we cannot assume that Parker's authority from the company was such that his actions in this matter would bind the company. It was an issue in the case, and it should have been proved and not left to assumption nor presumption. Appellant's contention here is that a general agent's authority to bind his principal through a subagent depends, in the absence of proof of express authority, upon the nature of the business he is transacting, and that it may be implied and is implied when the nature of the busi-

ness requires the implication.   There is nothing in this record as to the nature of the business of the appellant, nor as to the nature of Parker's duties as fiscal agent or director, and we cannot assume his authority from such a description. The appointment of respondent is signed "United Wireless Tel. Co."   Underneath appears the name "Geo. H. Parker." This was the basis of respondent's claim that he was acting for both the company and Parker.   He says it was given him by Parker.   If so, it would prove authority from Parker, but it could not prove authority from the company to Parker.   If we could find any evidence to justify an assumption that the stock included in the last sale was the stock of the company and not the stock of Parker, or could find any evidence of a benefit to the company .from the sale, or of its ratification, the case would be easier upon the theory of implied authority.   But there is no such evidence. On the contrary it would appear that the company had no part in the transaction and that Parker was dealing in his own stock.   On June 6, when the notes and mortgages which were to be exchanged for the stock were delivered at the Seattle office, the following receipt was given M. L. Cavanaugh:

"Received of Mr. Cavanaugh note & mtg. for 1000 (Geo. D. Farwell) dollars. `

"Note & mtg. for 1000 C. E. Rigby.

"Note & mtg. for 1200 Alex McLush, for examination. Also five abstracts covering above property.

"Geo. H. Parker, per J. M. Martin."

On June 15, when it had evidently been determined to accept the notes and mortgages in exchange for the stock, Parker gave the following receipt:

"Received of M. L. Cavanaugh payment in full for 100 shares of the preferred stock of the United Wireless Telegraph Co., same to be delivered as soon as received from home office.                                        Geo. H. Parker."

These receipts would seem to indicate that they were

dealing with Parker's stock, and not the stock of the company. They would at least be no proof that the stock was that of the company. We therefore hold that, in the face of the issue raised, the respondent has failed to prove that he had any contractual relation with the appellant, and for this reason his action must fail. *Shavalier v. Grand Rapids Bark & Lumber Co.*, 128 Mich. 230, 87 N. W. 212; *Carroll v. Manganese Steel Safe Co.*, 111 Md. 252, 73 Atl. 665; *Kalina v. Robert Gair Co.*, 125 N. Y. Supp. 1040. Having reached this conclusion upon the first and third assignments of error, it is not necessary to discuss the second.

The judgment is reversed, and the cause remanded with instructions to·dismiss.

CROW, ELLIS, and CHADWICK, JJ., concur.