RANDOLPH B. MASON

*vs.*

WILLIAM J. C. DULANEY AND CHARLES H.
CONSOLVO.

*Action on Contract—Evidence of Agency—Estoppel by Silence.*

In an action for the price of building and repair work on certain property, *held* that, the work having been done by plaintiff under a contract, not with defendant, but one who had jointly purchased the property with defendant, and to whom defendant had transferred his interest in the contract of purchase, and defendant not having authorized such joint purchaser to make the contract for the work on his behalf, nor ratified it, defendant was not liable.  pp. 112-115

That one joint purchaser of property, after having transferred to the other his interest under the contract, knew that building and repair work was being done on the property, and did not inform the contractor that he was not interested therein, did not involve liability on his part to the contractor, on the doctrine of estoppel by silence.  pp. 112-114

*Decided August 11th, 1923.*

Appeal from the Circuit Court for Baltimore County (PRESTON, J.).

Action by Randolph B. Mason against William J. C. Dulaney and Charles H. Consolvo, the summons not however being served on said Dulaney. From a judgment for defendant Consolvo, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, ADKINS, and OFFUTT, JJ.

*John Hubner Rice* and *Edward H. Burke,* with whom were *Hinkley, Hisky & Burger* on the brief, for the appellant.

*Elmer J. Cook* and *Clarence A. Tucker,* with whom were *Knapp, Ulman & Tucker* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

By a written contract made in April, 1918, the appellees, Charles H. Consolvo and one William J. C. Dulaney, bought of R. Brent Keyser, William Keyser, Jr., and Mathilda K. Manly, a tract of land in Baltimore County, known as "Brentwood" with the growing crops and certain property therein mentioned, at and for the sum of twenty-two thousand five hundred dollars; of this sum twenty-five hundred dollars were paid before the execution of the contract, and the balance was to be paid in installments with interest thereon, at the times therein stated.

Included within the grant was the vendors' right to use "the right of way across the 'Bank's property' adjoining the Reisterstown road," in respect to which the contract contained a provision that if upon examination of the title it was found that such right of way did not pass, then, upon the purchasers giving thirty days' notice of such fact, the amount of the purchase money paid prior to the execution of the contract was to be returned to them and the contract cancelled.

As stated by Consolvo, a few days after the signing of the contract Dulaney approached him and said his wife was much pleased with the property and asked Consolvo if he would sell to him his interest in it. Consolvo, as he expressed it, "retired" from the transaction and Dulaney "took the place." He thereafter gave it no concern, and, as he says, he thought he was absolutely out of it.

Thereafter, between the tenth and twentieth days of May, the appellant, Randolph B. Mason, a contractor and builder, by appointment with Dulaney, went to the "Brentwood

Farm," and there Dulaney pointed out to him certain repairs he wished made upon the dwelling house and stables thereon. In addition to this work, he also made known to Mason that he wished to build a hog house and chicken house, but before building these he said he wished to get an approximate price or charge therefor and submit it to his partner before having the work done.

A few days thereafter, Mason went to "the bank," and after consulting some one in the bank, was told that Dulaney "did not rank very well," but as to Consolvo, "do all the work he wants." Upon that statement of the financial status of the parties, he says he sent labor and material to "Brentwood" and did the work mentioned, including the building of the hog house and chicken house, which, as we gather from the record, was finished sometime early in August, 1918. The record, however, discloses that he never called on Consolvo to learn what work he wanted done, but he did the work under an agreement with Dulaney alone, because, as he says, he was told Dulaney and Consolvo were the owners of the property. The work was done and the material furnished under a verbal understanding between Mason and Dulaney by which the former should be paid the cost of material and labor, plus ten per cent.

During the progress of the work, bills were rendered every two weeks to Dulaney by Mason, for labor furnished and material used, in which Dulaney was charged therewith, and the payments made thereon were made by Dulaney.

The entire cost of the work and material amounted to $9,736.68. Of this amount $5,634.68 were, at different times, paid by Dulaney on account, leaving unpaid thereon the sum of $4,102.00.

The appellant at no time saw or had any communication with Consolvo in relation to the work and material furnished, and he, when upon the stand, testified that he never saw him until the morning of that day in the court house.

It was Dulaney, as he says, that he "did all the business with for the whole work." He further said that he made

no effort to ascertain by whom the property was owned, but was told that Dulaney and Consolvo had together bought the property.

On the 18th day of October, 1918, Mason notified William J. C. Dulaney, Charles H. Consolvo, R. Brent Keyser, William Keyser, Jr., and Mathilda K. Manly, as owners of the property, of his intention to claim a mechanic's lien upon it for the balance owing upon the work done and material furnished by him, as above stated. In that notice he stated that he had furnished the labor and material to William J. C. Dulaney under an agreement made by him with Dulaney.

It would seem from the record that there was nothing done, after the execution of the contract, to carry out its provisions, that is to say, neither the deed to the purchasers, nor the mortgage from them to the vendors mentioned therein, was ever executed.

Dulaney took possession of the property and had the building and repair work done, but, as we understand, nothing more than we have stated was done towards the performance of the contract.

Some time after the filing of the mechanic's lien, but just when the record does not disclose, a bill was filed by the vendors, R. Brent Keyser and others, to enforce the payment of their lien by the sale of the property, and in those proceedings a decree was passed on January 6th, 1921, for the sale of the property, with direction that out of the proceeds of sale the costs of the proceedings and the vendors' lien should first be paid, and the surplus, if any, paid to Mason upon his mechanic's lien. The proceeds of sale were not more than sufficient to pay the costs of the proceedings and the vendor's lien with interest, and consequently nothing was paid on the mechanic's lien.

At the sale, the property was struck off to one Trehy, acting for Consolvo, who is the admitted owner of the property.

Thereafter, on the 23rd day of July, the suit in this case was brought by the appellant against Dulaney and Consolvo

upon the common counts, to recover the amount said to be due and owing to Mason for the work and material furnished by him in the construction and repairs made upon the property in question.

The summons was never served upon Dulaney, and the case went to trial against Consolvo alone, resulting in a verdict for the defendant. It is from that judgment that the appeal in this case was taken.

In the trial of the case five exceptions were taken to the court's rulings on the evidence. These, we understand from the appellant's brief, are abandoned, but if not, we find no reversible error in the rulings on them.

The sixth exception is to the ruling of the court in granting the defendant's prayer instructing the jury "that the defendant Consolvo is not bound by any contract or agreement which the jury may find the defendant Dulaney made with the plaintiff for repairs or improvements to the property mentioned in the evidence, known as "Brentwood," unless the making of such contract or agreement was previously authorized or subsequently ratified by the said Consolvo, and the jury are further instructed that there is no evidence in this case legally sufficient to show any such authorization or ratification by the said Consolvo, and the verdict of the jury should therefore be for the defendant Consolvo."

It is contended by the appellant that the fact that Consolvo saw the work going on, and kept silent, was, under the facts and circumstances of the case, evidence sufficient to go to the jury as tending to show ratification of the contract for the repairs and construction of said buildings.

In this contention the appellant invokes the aid of the doctrine of estoppel by silence, which, as stated in *Carroll* v. *Manganese Safe Co.,* 111 Md. 258, quoting from 16 Cyc. 681, arises "where a person who by force of circumstances is under a duty to another to speak, refrains from so doing and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice."

This is no doubt the settled law of this state. *Carmine* v. *Bowen,* 104 Md. 198.

In *Carroll* v. *Mangenese Safe Co., supra,* where this doctrine was applied, it was agreed, between the plaintiff and the sales agent of a manufacturing company, that if the plaintiff aided the agent in obtaining contracts, the agent would pay him some compensation therefor. The plaintiff introduced the agent to a purchaser, but he refused to pay the price demanded and offered a smaller sum. The agent told the plaintiff that if the sale were made at that sum there would be no commissions for either of them. To this statement, plaintiff made no reply. Afterwards a sale was made at the price offered and the court held that the plaintiff's silence under the circumstances estopped him from claiming commissions.

In the case of *Carmine* v. *Bowen, supra,* also cited by appellant in support of his contention, a controversy existed between the landlord and the tenant as to the tenant's right to harvest his crop on the demised premises after the term of rental had expired. The landlord who denied the tenant's right was upon the premises while the tenant was engaged in sowing the crop in question. The tenant said to him, "I don't anticipate any trouble in the cutting of my crop," and the landlord made no reply. JUDGE McSHERRY, speaking for the Court in that case, in holding that the landlord was estopped from denying the tenant's right to harvest the crop, said, "where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent * * *. Silence is a species of conduct and constitutes an implied representation of the existence of the state of facts in question, and the estoppel is accordingly a species of estoppel by misrepresentation. * * * When the silence is of such a character and under such circumstances that it would become a fraud upon the other party to permit the party who has kept silent to deny what his silence has induced the other to believe and act upon it, it will operate as an estoppel."

It is shown from the authorities stated, that the doctrine is only applicable when there is a duty imposed upon the party remaining silent to speak and that his silence at such time, under the facts and circumstances of the case, is of such a character as to make it a fraud upon the other party to permit him to deny what his silence has induced the other to believe and act upon to his injury or loss.

The facts and circumstances in *Carroll* v. *Mangenese Safe Co., supra,* and *Carmine* v. *Bowen, supra,* differ widely from the facts and circumstances in the case before us.

It is true that Consolvo had agreed with Dulaney to purchase the property from R. Brent Keyser and others, but before the agreement between Dulaney and Mason for the repairs and construction of the buildings was made, Consolvo, by his agreement with Dulaney, had, as he thought, not only withdrawn from all participation in the purchase of the property, but had surrendered to Dulaney all the rights acquired by him under the contract of purchase, and was, as he thought, released from all obligations incurred by him.

But his release from those obligations depended upon the consent of the vendors, and it appears that they were unwilling to release him. This fact, however, was not known to Consolvo until six months after the purchase of said lands by him and Dulaney, when he, in October, 1918, was called upon by the vendors to pay the first payment of interest, which became due at that time.

This was not only long after his alleged visits to "Brentwood," when the work was nearly completed, but long after the work was actually finished and the obligations to Mason incurred under his contract with Dulaney.

It cannot, we think, be rightfully claimed that it was the duty of Consolvo, after learning, upon his visits to "Brentwood," of the repairs and building being done thereon, to notify Mason that his rights, under the contract of purchase of the property, in the lands had passed to Dulaney, in the manner stated, and that he was not liable for the costs of the

repairs made and buildings constructed by Mason under his agreement made with Dulaney, to which the attention of Consolvo had never been called by Mason, or by anyone, so far as the record discloses, when, at the time it was made, Mason, as he says, had been told that the property had been purchased by Consolvo and Dulaney and that he had learned that the financial standing of Dulaney was bad and that Consolvo's was good.

It was with this knowledge that he proceeded to do the work and furnish the material under the agreement with Dulaney, charging Dulaney alone therefor, and what was paid thereon was paid by Dulaney, and it was only because of Dulaney's failure to pay the balance of the money, that he filed his mechanic's lien, without ever calling upon Consolvo, the man he had been told was all right financially, to pay the same.

In the mechanic's lien he treated Consolvo as one of the owners of the property, and stated therein that the work and material were furnished upon the agreement made with Dulaney.

In none of his dealings with Dulaney is it shown that he regarded him as the agent of Consolvo, or that Consolvo was in anyway liable for the costs of the work and the material furnished, except in his claim for a mechanic's lien he treated him as owner.

It was not until after the sale of the property under the decree passed in the proceedings for the enforcement of the vendors' lien, and after it was found that the proceeds of sale were only sufficient to pay the costs of the proceedings and the lien claim, that he instituted the proceedings in this case. This was the first notice from Mason to Consolvo that he held the latter liable for the balance owing him for such work and material furnished, except as one of the owners, as we have already stated.

The property was sold, under a decree, at public sale, and was struck off to Trehy, acting for Consolvo. The fact that

Consolvo became the purchaser at the sale, cannot, we think, give color or weight to the appellant's claim that his silence was of a character to make it a fraud to permit him to deny what Mason claimed induced him to act to his prejudice.

The silence of Consolvo, under the facts and circumstances of this case, was not a breach of any duty that he owed Mason, by which he was estopped from denying liability under the doctrine of estoppel by silence. The prayer granted by the court withdrawing the case from the jury, because of a want of legally sufficient evidence tending to show either authorization or ratification by Consolvo of the contract made by Dulaney with Mason for the work done and material furnished, was, we think, properly granted, and the judgment below will be affirmed.

*Judgment affirmed, with costs.*