AUTO OUTING COMPANY, *vs.* C. E. McFREDERICK.

*Sale of Automobile—Written Agreement—Provision for Refund—Authority of Agent—Ratification—*
*Verbal Promise.*

That the vendor of an article failed to sign the order therefor, in token of its acceptance, as was intended, is immaterial, if the sale was consummated, and the article actually delivered, this involving an acceptance of the order.                    p. 110

Where the purchase of an automobile was made from an agent of the seller, upon a printed form of agreement, duly filled in, and signed by the buyer, which contained a provision for a refund of the amount of any reduction in price before delivery of the car, and also a provision, conspicuously placed, that "no agreements are recognized other than those contained herein," the buyer cannot set up a collateral oral agreement with the agent for a refund upon any reduction which might be made before a date some months later, the authority of the agent being patently confined to the written form. of agreement, and evidence of such oral agreement not being receivable in the face of the written agreement.                    p. 112

The vendor's undertaking for a refund of part of the price in a certain event being embodied in the written contract of sale, with a prohibition therein of additional agreements, the purchaser could not assert an agreement by the vendor's agent for such a refund in a different event, in the absence of evi-

dence that the vendor held out the agent as having authority to make such an agreement.                              p. 112

That the vendor's manager, when applied to, by the purchaser of an automobile, for a refund of a part of the price, in conformity with an unauthorized promise by the vendor's agent, said that he would see what he could do with the factory, and later, that he could not do anything, as the factory would not back them up, did not show a ratification or acknowledgment of any obligation as regards the agent's promise.    pp. 112, 113

Failure to deny a claim does not alone amount to a ratification or adoption of the obligation contended for, unless from the principal's failure to dissent, under the circumstances, the ordinarily intelligent man would be justified in inferring that the principal assented, or unless the failure to dissent cause the other party to proceed to his prejudice in reasonable reliance upon such failure; and in either situation the failure to dissent can be relevant only if the principal is fully acquainted with the facts.                              p. 113

Where the vendor's agent had a written, or printed, form of agreement for sale, in which a clause regarding a refund of price was clearly set out, and other agreements were expressly and clearly excluded, and the agreement as finally filled in was to be referred to the vendor as the agreement to be accepted by it, and the agreement was accepted by the buyer, testimony as to a verbal agreement by the agent as to a refund, different from that contained in the writing, was inadmissible.    p. 113

A claim by the purchaser, as to an agreement in regard to a possible refund of part of the price, made some time after the sale, *held* untenable, in view of lack of consideration for such an agreement, and lack of authority in the agent who made it.
                              p. 114

Where parol agreements, in conflict with a written contract, were admitted in evidence before the written contract was before the court, a motion to strike out such parol evidence, made after the written contract was brought into the case, should have been granted.                              p. 114

*Decided June 7th, 1924.*

Appeal from the Superior Court of Baltimore City (DAWKINS, J.).

Action by C. E. McFrederick against the Auto Outing Corporation. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before PATTISON, URNER, OFFUTT, DIGGES, and BOND, JJ.

*Paul R. Kach* and *Karl F. Steinmann,* for the appellant.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellee.

BOND, J., delivered the opinion of the Court.

The plaintiff below, now appellee, sued for a return of $320 of the purchase price paid for a Buick automobile. In a formal written contract or order the price of the car was fixed at $1,985, with additional charges for an extra tire and other accessories purchased at the same time. And the purchaser alleged that he was induced to enter into the agreement to purchase on the faith of a collateral agreement that the amount of any reduction from this price before August 1st, 1921, would be repaid to him. An additional, subsequent, agreement to the same effect, upon consideration of a later, prompt, payment of a deferred portion of the purchase price, was alleged as an additional foundation for the suit. There was a verdict and judgment for the plaintiff, on testimony for the plaintiff only, and exceptions taken by the defendant have brought before this Court questions of admissibility in evidence of the alleged collateral and subsequent agreements, and of sufficiency of the proof of the reduction in price even if such agreements be admitted.

The plaintiff testified that when he entered the appellant's place of business, a gentleman behind the accessories counter referred him to a Mr. Watkins as a salesman, that Mr. Watkins demonstrated the car to him, and that the sale in all its details was made through Mr. Watkins, without any contact between the buyer and other agents or officials. The first and second exceptions are to the ruling of the court in

allowing the plaintiff to add, "So the Marmon car had already dropped one thousand dollars in price, and I said, 'Mr. Watkins, if there is any possibility of the price of this car dropping, I am perfectly willing to wait. This is not an emergency buy, as I do not have to have a car now, and I am perfectly willing to wait.' He said, 'This car, Mr. McFrederick, the price is guaranteed to July 31st.' On the strength of that—" The narration stopped there.

When this testimony was given, the writing was not yet before the court. Introduced on cross-examination, it appeared to be a printed form, signed by the purchaser and by Mr. Watkins as salesman, filled in for the purchase of a Buick touring car, model 21-45, showing the total purchase price with accessories to be $2,083.50, and a deposit of $98.50 to have been made by the purchaser. There is a contract, in eight short printed clauses immediately above the signatures, and, among the clauses, the four following:

> "Delivery of the above to be made on April 15, '21, or as soon thereafter as possible. If the retail price, of the Buick motor cars is changed before delivery to me of the car herein ordered, I agree to pay the new price or permit you to cancel this order upon the return to me of my deposit. If a reduction in the list price occurs before car is delivered, customer to be given full credit. * * * This order is non-transferrable and is not valid unless accepted by the dealer or his authorized representative. * * * No agreements are recognized other than those contained herein."

In the lower left-hand corner of the paper there is a space designated for the signature of the dealer, or principal, in accepting the order; and on this paper the space is unsigned. The appellee contends that for lack of this signature the paper should not be taken as the written agreement or memorandum of the transaction. The plain purpose of the provision for the dealer's signature was to withhold the power of acceptance of the sale from the salesman and to reserve it to the dealer, and, in effect, the signature of one party to the

sale, denoting its acceptance, is lacking. But the sale was consummated, the car actually delivered, and the order, therefore, clearly accepted by the dealer in point of fact. "Any written contract, though signed by one party only, binds the other if he accepts the writing." 1 *Williston, Contracts,* secs. 90a and 633; *Brantly, Contracts* (2nd ed.) 50; 2 *Page, Contracts* (2nd ed.) sec. 1325; *Bulwinkle* v. *Cramer et al.,* 27 S. Car. 376, 381; *Forthman* v. *Deters,* 206 Ill. 159, 167; *Parker* v. *Carter,* 91 Ark. 162 167; *Kessler* v. *Smith,* 42 Minn. 494. The appellee testified that it was the order under which the car was bought.

The allowance of testimony of a subsequent agreement for a refund of part of the price is the subject of the third and fourth exceptions. These exceptions, too, were taken before the writing was put in evidence. The fifth and sixth exceptions are based upon the overruling of motions made, after the introduction of the written agreement, to strike out all testimony of conversations with the salesman relating to the warranty, as it is called; and those two exceptions, therefore, cover the ground of all the preceding four exceptions together.

On the question of the subsequent agreement the plaintiff's testimony was that, at the time of the delivery of the car, on May 2, 1921, in order to protect himself still further in case of a drop in price, he paid, not the whole $1,985 which was then due, but $1,200 in cash, and for the remainder gave three notes for three months, to August 1, 1921, made payable to the General Motors Acceptance Corporation. And his testimony was that at that time he said to the salesman, "Mr. Watkins, in the event that the price drops, I am to be taken care of. He said, 'Absolutely, whatever reduction there is in the price up to July 31st, you will be taken care of.' "

There was no statement in the testimony that such a further agreement was induced by the cash payment made and notes delivered at that time. The seller actually received less than was already owing to him. *Brantly, Contracts* (2nd ed.), sec. 38; *Linz* v. *Schuck,* 106 Md. 220.

On June 5th, 1921, according to the testimony, an advertisement of a drop in Buick cars, of 1922 models, at least, appeared in the *Baltimore Sun,* and the plaintiff saw Mr. Watkins, and Mr. Watkins said he would see what he could do, and finally referred the plaintiff to Mr. Bruce, the secretary and manager of the Auto Outing Company. The plaintiff "told Mr. Bruce what his mission was," and "he (Mr. Bruce) did not deny that the price had been guaranteed, but he said he would see what he could do with the factory." And later Mr. Bruce said he could not do anything, that the factory would not back them up.

The evidence of a drop in price of the car is not clear. The one purchased 'was a 1921 model, and the newspaper advertisement introduced refers only to 1922 models. "Beginning June 1st," it reads, "the new series and prices will be as follows, f. o. b. factories, Flint, Michigan." And it then enumerates only 1922 models. The claim here is for $320 reduction from $1,985, the price of a 21-45 car; the advertisement shows, for 22-45 cars, a reduction of $270 from $1,795 to $1,525. Yet, although the plaintiff testified that the drop on his car was $320, it seems quite clear that the advertisement was offered as his proof of the drop.

At the conclusion of the evidence thus reviewed, a prayer was offered by the defendant, now appellant, for instruction of a verdict in its favor for want of legally sufficient evidence to establish the claim. It was refused, and the refusal is the subject of the seventh exception. Obviously the propriety of that instruction was largely involved in rulings on the admission of the alleged collateral and subsequent agreements. If they were not properly admitted the basis of the suit would be entirely lacking. On the other hand, if the alleged agreements were properly admitted, the exception to the refusal of the prayer would depend upon the further question of the sufficiency of proof of the drop in price of the particular car sold.

First, then, on the admission of the alleged collateral agreement by the salesman. The purchase was made from

an agent of the seller, upon a printed form of agreement, duly filled in, and signed by the buyer, which contained a provision for a refund of the amount of any reduction in price before delivery of the car, and a provision that "no agreements are recognized other than those contained herein." Can the buyer set up a collateral oral agreement with the agent for a refund upon any reduction which might be made before a date some months later? We think not, for the reason that in this situation the authority of the agent is patently confined to the written form of agreement, and for the reason that evidence of such an oral collateral agreement cannot be received in the face of that written agreement. The case is not one in which the limitation upon the agent's authority is only to be found among many clauses crowded into the contract; it is about as open and conspicuous as it could well be made, and would hardly be overlooked except by neglect or indifference of the buyer to the contents of the paper he was signing. The clause, "No agreements are recognized other than those contained herein," is the last, just above the buyer's signature. *Oxweld Acetylene Co.* v. *Hughes,* 126 Md. 440; *Carroll* v. *Manganese Safe Co.,* 111 Md. 256. "With respect of price, therefore," says *Mechem on Agency,* sec. 857, "the situation seems to be this: If the principal has not fixed the price, the agent may do so, within ordinary and reasonable limits, because it must be fixed in order to effect the sale. If the principal has prescribed the price, his limitations are binding upon the agent, and upon third persons also, unless the principal's provisions as to price are to be regarded as mere private instructions to the agent or unless the principal has in some way held the agent out as one having authority to fix the price." Here the principal's undertaking for a refund of part of the price was embodied in the contract, with a prohibition of additional agreements; and there was no evidence of the principal's holding out to the contrary. We see no footing for the theory of ratification in the testimony that Mr. Bruce, when applied to after the newspaper advertisement, said he would see what he could do with the factory, and, later, that he could not do

anything, that the factory would not back them up.    There is
no express acceptance of an agent's previous promise, no
express acknowledgment of an obligation, in that; none at all
unless ratification may be inferred from the lack of an express
repudiation of the agent's undertaking.    It is not stated in
evidence just what the plaintiff told Mr. Bruce, or what if any
knowledge Mr. Bruce had of the plaintiff's contention for a
right to a refund up to a time later than that fixed in the
written agreement.    But apart from that, failure to deny a
claim does not alone amount to a ratification or an adoption
of the obligation contended for.    In some situations it may:
when from failure to dissent, under the circumstances, the
ordinary intelligent man would be justified in inferring that
the principal assented, or when failure to dissent may cause
the other party to proceed to his prejudice in reasonable
reliance upon the failure to dissent.    And in either situation
failure to dissent can be relevant only upon a showing of
full acquaintance with the facts on the principal's part.
1 *Mechem, Agency,* secs. 347, 349, 453 and 454.    But we
find evidence of these essentials of ratification or estoppel
lacking in this case.

The further objection to the admissibility of the testimony
of a verbal agreement by the salesman for a refund during
a period beyond that fixed in the writing, based upon the
rule for the exclusion of parol evidence to add to, vary, or
contradict the terms of an agreement committed to writing,
is connected closely with the question of the authority of the
agent.    It is sometimes difficult to determine whether the
exceptional grounds for admitting collateral agreements exist,
but here it seems to us sufficiently clear that none of them
exist.    The agent had a written, or printed, form of agree-
ment for a sale, the clause regarding a refund of price before
delivery was clearly set out in it, other agreements were
expressly and clearly excluded, and the writing as finally
filled in was to be referred to the dealer or principal as the
agreement to be accepted by it.    The arrangement was clear,
there was nothing unlawful about it, and the buyer agreed to
it.    As we see it, to admit an additional agreement by the

salesman, extending and adding to that expressed in the contract, would not only violate established principles of law, but would make it well nigh impossible to carry on affairs through any large number of agents. *Rafferty* v. *Butler,* 133 Md. 430; *Bulwinkle* v. *Cramer et al.,* 27 S. Car. 376, 381.

The contention for a subsequent agreement with the salesman, on May 2nd, when the car was delivered, and $1,200 paid on account of the purchase price, seems also untenable on the evidence presented. There is no suggestion of consideration for it, as has been stated; the authority of the salesman to make it, lacking at the time of sale, as we find, would seem doubly lacking after the sale had been consummated. And the discussion already given to the conversation between the plaintiff and Mr. Bruce explains our conclusion that no agreement or ratification of agreement can be made from that. So our final conclusion is that the claim of a subsequent agreement has not been supported by legally sufficient evidence. We do not find it necessary to consider the objection that the advertisement of reduction in price of automobiles did not refer to 1921 models.

As the written contract was not before the court at the time of the admission of testimony to prove parol agreements which gave rise to the first four exceptions, there may be some logic in holding the action of the court in those instances to be free from error. It is sufficient to say that, for the reasons we have stated, our conclusion is that the motions to strike out that evidence, made after the writing was brought into the case, should have been granted, and, so, that there was error in the rulings excepted to in the fifth and sixth exceptions. With the testimony of parol agreements out of the case, of course, the prayer directing a verdict for the defendant must be granted, and the reversal for the errors found will have to be without a new trial.

*Reversed without a new trial, with costs to the appellant.*