589 A.2d 497

**EASTERN SHORE WAREHOUSING, INC.**

**v.**

**Derek Richard WALLIS, et al.**

**No. 889, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 3, 1991.

George G. Tankard, III (J. Paul Mullen and Lord & Whip, P.A., on the brief), Baltimore, for appellant.

Angus R. Everton (Robert C. Morgan, Gary R. Jones and Montedonico & Mason, Chartered, on the brief), Baltimore, for appellees.

Argued before GARRITY, FISCHER, and CATHELL, JJ.

FISCHER, Judge.

Eastern Shore Warehousing, Inc. (ESW), appellant, appeals from a judgment entered against it by a jury in the Circuit Court for Wicomico County in favor of Derek Richard Wallis on behalf of those certain underwriters at Lloyd's, London to his own use and to the use of Dresser Industries, Inc., London, England and Dresser Industries Inc., Dallas, Texas (Dresser). The amount of the judgment is $1,169,818.

Appellant raises the following issues for our consideration:

1. Did the trial court err in denying ESW's motions for judgment based on the nine (9) month contractual limitation for filing suit?

2. Was the jury's award of damages excessive and did the trial court's refusal to reduce the award constitute error in light of the contractual limitation on damages?

3. Did the trial court err in denying ESW's motion to strike plaintiff's designation of experts and to exclude certain testimony of same at trial or continue the case?

4. Did the trial court err in denying ESW's motion for judgment at the end of Dresser's case based on plaintiff's failure to establish receipt of the goods by ESW in good order and condition?

Since we believe appellant's first issue has merit, it will not be necessary for us to consider the remaining issues.

*Facts*

Dresser, a manufacturer of electronic and mechanical dispensing equipment, leased storage space at the warehouse facility owned and operated by ESW. Pursuant to the parties' warehousing contract, ESW prepared warehouse receipts which were given to Dresser at the beginning of each month. The receipts indicated the total inventory maintained in storage by Dresser. Additional warehouse receipts were also generated by ESW and forwarded to Dresser during the course of the month upon the receipt and/or shipment of goods owned by Dresser. The reverse sides of the warehouse receipts contained terms and conditions of the contract governing the storage of the Dresser goods held by ESW.

With respect to the requirements for submitting damage claims and filing lawsuits, Section 11 of the contract conditions provides as follows:

Notice of Claim and Filing of Suit, Sec. 11

(a) Claims by the depositor and all other persons must be presented to the warehouseman within a reasonable time, and in no event longer than 60 days after delivery of the

goods by the warehouseman or 60 days after depositor of record or the last known holder of a negotiable warehouse receipt is notified by the warehousemen that loss or injury to part or all of the goods has occurred, whichever time is shorter.

(b) No action may be maintained by the depositor or others against the warehouseman for loss or injury to the goods stored unless timely written claim has been given as provided in paragraph (a) of this section and unless such action is commenced either within nine months after date of delivery by warehouseman or within nine months after depositor of record or the last known holder of a negotiable warehouse receipt is notified that loss or injury to part or all of the goods has occurred, whichever time is shorter.

(c) When goods have not been delivered, notice may be given of known loss or injury to the goods by mailing of a registered or certified letter to the depositor of record to the last known holder of a negotiable warehouse receipt. Time limitations for presentation of claim in writing and maintaining of action after notice begin on the date of mailing of such notice by warehouseman.

As indicated, Section 11(a) requires that claims by the depositor (Dresser) must be presented to the warehouseman (ESW) within sixty days of the date the depositor receives notice from the warehouseman of a loss. Section 11(b) requires that no action (lawsuit) may be maintained by a depositor against the warehousemen for loss or injury to goods stored unless such suit is commenced within nine months after the notice required by Section 11(a) is given.

A fire occurred on September 23, 1986 in the ESW warehouse. As a result, Dresser sustained serious losses to its stored property. On October 28, 1986, ESW by letter notified Dresser of the loss. On November 12, 1986, Dresser gave notice of its claim by letter to ESW. Although Dresser gave notice of its claim pursuant to the requirements of Section 11(a), it failed to file suit within nine months as required by Section 11(b). Dresser filed suit on

May 26, 1988, almost ten months beyond the limitation set forth in Section 11(b) of the contract between the parties.

The trial judge submitted to the jury the issue as to whether the principles of equitable estoppel excused Dresser's late filing. The jury found in favor of Dresser. Our issue is whether there was sufficient evidence to justify the submission of that issue to the jury.

Appellees argue that the issue of equitable estoppel should properly be left to the jury. They aver that Roscoe Sharum, the adjuster handling the claim for appellees, was misled by ESW's agent R.Z. Leizure into believing that Sharum had complied with all of ESW's requirements. It is, therefore, necessary for us to review in detail the testimony of the parties.

After ascertaining that Leizure was his contact person with ESW, Sharum wrote to Leizure on June 2, 1987 informing Leizure that a claim was asserted in the amount of $964,818. In the letter Sharum stated, "Please advise our office as to what claim documentation material you will require so this matter may be concluded." Sharum further testified that:

> In the later part of June, 1987, we reached an agreement with Dresser Industries and the paperwork was signed. I sent a correspondence to Mr. Leizure, advising the amount of our payment, included with that was a subrogation receipt. I followed up by a telephone call to see if he received it. He said he had. I asked him if there was anything else he needed from us in the way of documentation, and if that met all the requirements in regard to time and notification had been met. He said, Yes. I didn't hear from him, and we calculated from the date of the end of the nine months to be July 28th of 1987. I even followed up with him on July 27th, just to make sure he had found everything in order. He said he had everything and everything had been complied with, and that there were attorneys on behalf of Eastern Shore Warehousing looking over things, and he would get back to us with an answer.

It is clear that Sharum did everything possible to comply with the requirements of Section 11(a) regarding the filing of a claim. Appellees' omission, however, was in not bringing suit within nine months as required by Section 11(b).

In *Knill v. Knill*, 306 Md. 527, 534, 510 A.2d 546 (1986) (quoting Pomeroy, Equity Jurisprudence, § 804 (5th ed. 1941)), the Court of Appeals approved of the following definition of equitable estoppel:

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity from asserting rights which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

■ This definition makes clear that, in order for equitable estoppel to apply, there must be: (1) voluntary conduct on the part of a party (2) and good faith reliance by another on that conduct (3) which has caused the second party to alter his position.

■ The trial judge, finding legally sufficient evidence to submit the issue of equitable estoppel to the jury, stated:

> I also do think there is legally sufficient evidence for the jury to decide the issue of estoppel, based on the conversations and correspondence between Mr. Sharum and Mr. Leizure. Mr. Sharum was well aware he had to do something in nine months. He misinterpreted what he had to do, according to his testimony. I think the receipt speaks in terms of actions, filing suit, he misinterpreted that, that he knew there was nine months there, he wanted to make sure everything that he had to do, regardless of what it was, was done within the nine month limitations. He called Mr. Leizure on two occasions to make sure 'I was doing everything I had to do within nine months,' according to his testimony. I haven't heard Mr. Leizure, but according to his testimony,

but he said, Mr. Leizure said everything was done that had to be done. He relied on it to his detriment. I think there is legally sufficient evidence to decide that issue. I am going to deny your motions.

From our reading of the conversations and correspondence between Mr. Sharum and Mr. Leizure, it is apparent that the subject being discussed was the filing of a claim, the requirement of Section 11(a). The subject of filing suit as required by Section 11(b) never arose. Mr. Sharum testified on cross-examination as follows:

Q. Is there a difference between notice of a claim and maintaining an action?

A. Maintaining action is presuming your action is doing something. Notice is notice.

Q. Do you think that, in your opinion then, maintaining an action in the context of that document did not mean instituting legal proceedings?

A. I think, in my opinion, it meant notifying that you were pursuing your claim and doing something. To me action means to do something.

Q. So, as far as you were concerned, the language in that document never required that any legal proceedings or lawsuit be instituted within nine months?

A. That is correct.

Q. Your conclusions in that regard were based solely upon your reading and interpretation of that document, not what anyone said to you, is that correct?

A. That's correct.

It is, therefore, beyond cavil that Mr. Sharum came by his misunderstanding of the requirements of Section 11(b) without any assistance, participation or omission by Mr. Leizure.

Ordinarily, equitable estoppel arises in cases of this nature because one party misleads the other into missing a filing deadline either by implying that the deadline has been extended or by assurances that the claim will be paid. It is clear that this did not occur here. Mr. Sharum testified:

Q. Now, aside from what is contained in the warehouse document that we just spent a lot of time on, aside from

that, it is my understanding that no one on behalf of Eastern Shore, including Mr. Leizure, ever told you that any length of time requirement for filing an action was extended—Well, strike—filing a lawsuit was extended, is that correct?

A. That is correct.

There is nothing in the record to suggest that Leizure did or said anything that gave a false impression or misled appellees or their agent in any way. As a result, appellees are left with the proposition that Leizure failed to advise Sharum that suit needed to be filed when Sharum asked if "everything [was] in order." It is clear that Sharum was inquiring about the state of his claim submission and Leizure was assuring him that the claim, as submitted, was complete. It is important to make clear that at no time did Leizure indicate that the claim would be paid. Leizure was under no duty to volunteer to Sharum that suit needed to be filed. In point of fact, there is nothing in the record to indicate that Leizure was anymore aware of the need to file suit than was Sharum. The only testimony on the point (from Leizure) is that Leizure was also unaware of the nine month limitation.

Appellees cite *Irving Pulp & Paper Limited v. Dunbar Transfer and Storage Co.,* 732 F.2d 511 (6th Cir.1984), wherein the court found equitable estoppel. The court stated:

After [the warehouseman] sent written notice of the loss to Irving Pulp on September 28, 1977, the record indicates that Bruce Drost, an attorney for Irving Pulp, and William Evans, an attorney for [the warehouseman] had several telephone conversations regarding the liability and damage issues. During each of these conversations Evans indicated that Irving Pulp should forward its damage claim to him and that it would be 'taken care of.'

*Irving Pulp and Paper,* 732 F.2d at 514.

The obvious difference between *Irving Pulp and Paper* and the case at bar is that Leizure at no time indicated that

the claim would be "taken care of" or any other words of similar effect.

In addition, appellees cannot reasonably argue that they changed their position or course of action based upon anything Leizure said. The primary distinction between this case and other similar cases is that at no time within the limitation period was Sharum, or, apparently, anyone else at Dresser, aware that suit had to be brought within nine months. As noted in *Impala Platinum v. Impala Sales*, 283 Md. 296, 323, 389 A.2d 887 (1978) (quoting *Savonis v. Burke*, 241 Md. 316, 319–320, 216 A.2d 521 (1966)):

> 'It is essential for the application of the doctrine of equitable estoppel that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party, sought to be estopped.' *Savonis*, 241 Md. at 319–320 [216 A.2d 521] and cases therein cited. Mere silence will generally not raise an estoppel against a silent party. *See Mohr v. Universal C.I.T. Corp.*, 216 Md. 197, 205 [140 A.2d 49] (1958) and cases therein cited. '[T]he doctrine is only applicable when there is a duty imposed upon the party remaining silent to speak ...' *Mason v. Dulaney*, 144 Md. 108, 114 [124 A. 390] (1923).

The evidence in the case at bar is uncontradicted that Sharum's inquiries to Leizure were solely directed at the Section 11(a) requirement to file a claim. There were no conversations or correspondence between the parties related to Dresser's obligation to bring suit within nine months. Leizure was under no duty to make Sharum aware of the requirement to bring suit pursuant to Section 11(b), and Leizure did nothing to lead Dresser to change its position to its detriment. Under the facts and circumstances of this case, there was insufficient evidence of equitable estoppel to submit the matter to the jury. The trial judge erred in failing to grant appellant's motion for judgment.

**150**

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.