631 A.2d 506

**MAYOR & CITY COUNCIL OF CUMBERLAND et al.**

v.

**Walter R. BEALL.**

**No. 85, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Oct. 5, 1993.

Certiorari Denied Dec. 17, 1993.

John J. Coyle, Jr. (Hidey, Coyle & Monteleone on the brief), Cumberland, for appellants.

Ronald J. Levasseur of Cumberland, for appellee.

Argued before WENNER, CATHELL and DAVIS, JJ.

CATHELL, Judge.

The Mayor and City Council of Cumberland and its insurer, Hartford Accident & Indemnity (hereinafter appellants), appeal a decision of the Circuit Court for Allegany County finding that the appellants were estopped from applying the statute of limitations as a bar to appellee Walter Beall's attempt to modify a workers' compensation award by filing a claim for additional compensation more than five years after the last compensation payment under the award. They also appeal the trial court's determination that the claim was timely made.

At the pertinent time, Article 101, section 40(c) of the Workmen's Compensation Act provided for modification of awards if "application therefor shall be made to the Commission within five years next following the last payment of compensation."[1] It is undisputed that the last payment of compensation occurred on September 19, 1985, that the modification claim was filed with the Commission on September 24, 1990, and that the claim was filed with the Commission more than five years after the last payment.

The crux of the case revolves around a letter sent not to the Commission, but to the insurer. That letter stated:

August 6, 1990

The Hartford

Attn: Samuel Gilliland

57 W. Timonium Road

---

1. The statute has since been recodified with little, if any, relevant substantive changes as section 9–736(a)(3) of the Workers' Compensation Act.

P.O. Box 350

Lutherville, Maryland 21093

RE: Walter R. Beall vs. City of

Cumberland/468C 53472 SG

D/A: 2/25/83

Dear Ladies and Gentlemen:

I was recently contacted by my client, Walter Ray Beall, as a result of the above captioned accident since he has had to lose additional time from his employment due to an exacerbation of his ongoing lumbar problem. As you will note from the notes of Dr. Bollino, the treating doctor, he put Mr. Beall off work as of July 26, 1990 until Monday, July 30, 1990. I have not talked to Mr. Beall or the doctor since that time, but I assume he did return to work on July 30, 1990.

In any event, I would appreciate it if temporary total disability could be paid for the dates claimed in this letter. If there is any difficulty with the payment of this, please advise as soon as possible.

Very truly yours,

/s/ Ronald J. Levasseur/ksr

Ronald J. Levasseur

RJL/ksr

The statute of limitations ran before the insurer responded to the letter. The insurer, in response to the letter, informed appellee that the claim was time barred. Prior to receiving the insurer's response, the appellee filed his claim with the Commission but, as we have said, that filing was untimely. The trial court apparently found either that the silence of appellant, following the direct question posed in the letter of August 6th, amounted to an estoppel by silence and thus a waiver of the statutory bar or that the letter was the filing of a claim with the Commission, or both. We disagree and shall reverse.

## Limitations and Equitable Estoppel Generally

In *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 620 A.2d 340 (1993), Vest asserted, among other things, that the Commission's express retention of jurisdiction to make a future determination of permanent partial disability tolled any application of the five-year limitation period. The Court disagreed, stating:

> The Commission's power to reopen awards . . . is expressly limited with respect to the time during which it may exercise that power. Section 40(c) . . . limits the exercise of that jurisdiction to a five-year period. . . .
>
> . . . [S]uch a reservation [of the power to reopen], even if intended by the Commission, is wholly inconsistent with § 40(c). The Commission cannot bypass the statutory restriction on its authority.

*Id.* at 475–76, 620 A.2d 340. *See also Adkins v. Weisner*, 238 Md. 411, 209 A.2d 255 (1965) (when weekly payments are converted to lump sum, the five-year period is computed from the lump sum payment date, not the date that weekly payments would have been finally paid).

The Court noted in *Montgomery County v. McDonald*, 317 Md. 466, 472, 564 A.2d 797 (1989), that:

> Undoubtedly the Act is to be construed liberally in favor of injured employees and to effectuate its remedial purposes, but a liberal rule of construction does not mean that courts are free to disregard the provisions comprising the Act. . . .
>
> The foregoing rule of construction is particularly apt for the subject limitations provision.
>
> "[T]he general purpose of the applicable workmen's compensation act to compensate injured workers should not be used to interpret the limitations provision, because the very existence of a limitations provision in the act indicates that the legislature has deliberately compromised the general compensation purpose in the interests of the purposes served by the limitations provision." [Citations omitted.]

*See also Walter J. Crismer & Son, Inc. v. Seal,* 258 Md. 437, 441, 265 A.2d 918 (1970) (failure of employer to post notices and the furnishing by employer of physicians to treat employee did not create estoppel as to the raising of limitations in workmen's compensation case).

*Booth Glass Company, Inc. v. Huntingfield Corporation,* 304 Md. 615, 500 A.2d 641 (1985), addressed the tolling of the three-year general statute of limitations then contained in Maryland Courts and Judicial Proceedings Code Annotated section 5–101. In *Booth,* the building owner discovered that glasswork installed by Booth leaked. Booth made numerous efforts to repair the work, but the problems were never completely rectified. During the period (two years) when Booth was attempting to repair the work and for two more years thereafter, its president proffered to the building owner, Huntingfield, that the repairs would be successfully made. Ultimately they were not.

Huntingfield eventually filed suit. Booth pled limitations, asserting that more than three years had elapsed from the time when Huntingfield had first discovered the problem. We had held that Booth's continuing attempts to repair the work tolled the statute.[2] In reversing us, the Court of Appeals noted:

> [W]e are aware that courts in some jurisdictions, in contract and warranty actions, have adopted or recognized the rule that limitations will be tolled where ... assurances are given that repairs will be made.... Other courts, however, have determined that even though assurances are given, attempts to repair will not toll limitations *absent a strong showing of inducement by the defendant not to sue.*

*Id.* at 622, 500 A.2d 641 (citations omitted, emphasis added).

The Court then addressed Maryland law, stating:

> We have long adhered to the principle that where the legislature has not expressly provided for an exception in a

---

**2.** We had held that the statute was tolled under the continuous course of treatment rule.

statute of limitations, the court will not allow any implied or equitable exception to be ingrafted upon it....

... In Maryland ... it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant "held out any inducements not to file suit or indicated that limitations would not be pleaded."

*Id.* at 623–24, 500 A.2d 641 (citations omitted). Furthermore:

The Court of Appeals does not allow any implied or equitable exception to be engrafted on the statute of limitations merely on the ground that such exception would be within the spirit of the statute. To the contrary, the Court looks to the public policy served by the defense of limitations, and permits it to function arbitrarily, without discrimination between the just and unjust claim, or the avoidable and unavoidable delay.

*Glenn v. Morelos,* 79 Md.App. 90, 99, 555 A.2d 1064 *cert. denied,* 316 Md. 427, 559 A.2d 790 (1989) (quoting *The Johns Hopkins Hospital v. Lehninger,* 48 Md.App. 549, 562, 429 A.2d 538, *cert. denied* 290 Md. 717 (1981)) (citation omitted). *See Antigua Condominium Association v. Melba Investors Atlantic, Inc.,* 65 Md.App. 726, 751, 501 A.2d 1359, *vacated on other grounds* 307 Md. 700, 517 A.2d 75 (1986) (no equitable estoppel in absence of inducements or indications that the defense of limitations will not be relied on by defendant); *McMahan v. Dorchester Fertilizer Co.,* 184 Md. 155, 160, 40 A.2d 313 (1944). In *The Johns Hopkins Hospital v. Lehninger,* 48 Md.App. at 564, 429 A.2d 538 we went on to say:

Maryland courts have infrequently addressed the juxtaposition of the defense of limitations and the doctrine of equitable estoppel.... We have already seen that the courts rigorously protect the defense of limitations....

In *Lehninger,* we noted and relied on *Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972), in which it was claimed that an accountant's assurances that the position of IRS was incorrect had lulled the plaintiffs into a false sense of security "which delayed the start of litigation." *Lehninger,* 48 Md.App. at 566,

429 A.2d 538. In the present case, as in those noted above, no assurances of any kind were made. Judge Digges's opinion in *Leonhart* states:

> [T]he Leonharts argue that appellee ought to be prohibited from using the statute as a bar since his conduct "obscure[d] the [appellants'] perception of the wrong.... It was not alleged that the accountant ... asked the Leonharts to forbear bringing suit ... [or] indicated he would waive the defense of limitations ... or that he induced them not to file suit by giving assurances.... [T]he only conclusion ... is that the delay ... was due to the lack of diligence on the part of the Leonharts.

*Leonhart*, 265 Md. at 227–28, 289 A.2d 1 (citations omitted).

In an earlier breach of contract case, *Walko Corporation v. Burger Chef Systems, Inc.*, 281 Md. 207, 378 A.2d 1100 (1977), the Court of Appeals discussed the general standards applicable to statutes of limitations.

> This policy of repose has fostered a traditional rule concerning the tolling of statutes of limitation that can be fairly termed one of strict construction. Early on we adopted this rigorous stance: "The principle of law is indisputable, that when the Statute of Limitations once begins to run, nothing will stop or impede its operation." The rule has lost little of its vitality.... [T]he principle ... "while not immutable under all circumstances ... is still the general legal approach."
>
> . . . .
>
> This venerable rule, which defers to the legislative intent expressed in the statute of limitations itself, ... avoids implied exceptions or strained constructions....

*Id.* at 210–11, 378 A.2d 1100 (citations omitted). *See also Glenn v. Morelos*, 79 Md.App. 90, 96, 555 A.2d 1064 (1989); *Bennett v. Baskin & Sears*, 77 Md.App. 56, 76, 549 A.2d 393 (1988).

In affirming a trial court summary judgment dismissing a case on the basis of limitations, the Court of Appeals stated:

There is no showing that Mr. Clagett *held out* any inducement not to file suit. There is no indication that Mr. Clagett *indicated* in any way that limitations would not be pleaded. There is no indication that any legal defense would be waived. There is *no showing* of any unconscionable, inequitable or fraudulent act of commission or omission upon *which Jordan relied* and has been misled to his injury.

*Jordan v. Morgan,* 252 Md. 122, 132, 249 A.2d 124 (1969) (emphasis added). *See also Nyitrai v. Bonis,* 266 Md. 295, 300, 292 A.2d 642 (1972) ("Settlement negotiations alone, however, do not raise an estoppel, especially where there is no showing ... that the appellee· ... *held out* any inducements not to file suit or *indicated* that limitations would not be pleaded." (citation omitted, emphasis added)); *Leonhart,* 265 Md. 219, 289 A.2d 1; *Watson v. Dorsey,* 265 Md. 509, 290 A.2d 530 (1972); *Johns Hopkins Hospital v. Lehninger,* 48 Md.App. at 568, 429 A.2d 538 ("Similarly the highest courts of other jurisdictions have refused, in the absence of fraudulent misrepresentation or concealment, to create an equitable estoppel precluding the defense of limitations.").

In the negligence case of *Bertonazzi v. Hillman,* 241 Md. 361, 216 A.2d 723 (1966), suit was filed against Hillman's administratrix several days after the expiration of the limitations period. Prior to Hillman's death, the plaintiff and the Hillmans' insurer had been conducting negotiations to settle the claim. When plaintiffs filed a suit against Hillman, the summons was returned *mortis est.* Plaintiff's lawyer discovered that it had been so returned on the 18th of July 1963, at about the same time he discovered that he had filed the suit in the wrong jurisdiction. He refiled the suit against the administratrix but still in the wrong county.

Plaintiff's counsel contacted the administratrix and informed her that there were some technical problems with the suit. The administratrix responded that she had no objection to a proper determination of the facts and referred plaintiff's lawyer to her lawyer. The administratrix's lawyer was called and told of the potential limitations problem. He agreed to accept service of process but indicated that he would not be consent-

ing to jurisdiction. Plaintiff's lawyer then served the administratrix's lawyer. Thereafter, the suit was dismissed because it had been filed in the wrong jurisdiction.

It was refiled in the proper jurisdiction after the statute had expired. When the plea of limitations was filed, the plaintiff filed a "Plea of Estoppel as to the Statute of Limitations." The telephone conversation between the plaintiff's lawyer and the administratrix's lawyer was the primary basis for the claim of estoppel. While the Court of Appeals held that the prior filing was sufficient to toll the statute,[3] it summarily rejected the estoppel argument:

> We see no support . . . for a finding of waiver or estoppel. . . . [T]here [is no] mention of or reference to any express promise or agreement . . . to waive the statute. . . . [N]othing that Mrs. Hillman or her lawyer said or did inspired or fostered the idea [that the statute would be tolled]. There is no assertion that representatives of Mr. Hillman's insurer led appellant to believe that liability would not be contested or that any legal defense would be waived.

*Bertonazzi,* 241 Md. at 365, 216 A.2d 723.

In *Cromwell v. Ripley,* 11 Md.App. 173, 273 A.2d 218 (1971), the appellant filed with the clerk of the court a motion to amend a declaration. The clerk failed to bring it to the attention of the court prior to the expiration of the limitations period. The trial court found:

> ". . . [I]t was counsel's responsibility . . . to keep himself abreast of the litigation of which he is counsel of record . . . it was your responsibility to see . . . that the motion . . . got

---

3. The Court of Appeals later, in *Walko Corporation,* 281 Md. 207, 378 A.2d 1100, strongly limited its holding in *Bertonazzi* as to the venue-limitations relationship. As pointed out by Judge Harrell for this Court in *Baker, Watts & Company v. Miles & Stockbridge,* 95 Md.App. 145, 196, 620 A.2d 356 (1993), Maryland Rule 2–101(b) amended May 14, 1992, effective July 1992, now provides that if an action is filed in a foreign court within the Maryland period of limitations and subsequently dismissed, but refiled in a Maryland court within 30 days, it shall be treated as timely filed. This new rule modifies the treatment of limitations issues when suits are wrongfully filed in foreign jurisdictions.

to the attention of the Judge ... and was acted upon before the Statute ran on August 18." [4]

*Id.* at 179, 273 A.2d 218. We held that limitations were not tolled by the deposit of the motion for leave to amend in the clerk's office, saying: "It was the obligation of appellant, in order to toll the Statute of Limitations, to commence an action within the three year period." *Id.* at 180, 273 A.2d 218.

*Dixon v. Checchia*, 249 Md. 20, 238 A.2d 247 (1968), involved a statute of limitations for the filing of claims against an estate. During the period after the accident, negotiations for settlement were undertaken. Checchia died. The Dixons were not informed of Checchia's death during the negotiations with Checchia's insurer. After the period for filing claims against Checchia's estate had elapsed the Court, in upholding the defense of limitations, stated:

> In this case, the statutory notice ... was given and it is not alleged ... that the administrator had " 'requested and induced' the appellant not to file suit and assure her 'that said claim would be settled and * * * damages paid by * * * deceased's estate without the necessity of filing suit.' " We do not think that the appellants were *induced* into filing after the expiration of the six month period.

*Id.* at 27, 238 A.2d 247 (citation omitted).

We note that information on the statute of limitations is equally available to all parties. These statutes of repose, being just that—*statutes,* are matters of record. The general rule is that "mere silence as to rights of record does not create an estoppel." *Zimmerman v. Summers,* 24 Md.App. 100, 119, 330 A.2d 722 (1975) (quoting *Oberheim v. Reeside,* 116 Md. 265, 276, 81 A. 590 (1911)) (referring to property rights of record).

### The Doctrine of Estoppel by Silence

One of the seminal cases addressing the doctrine of estoppel by silence was *Carmine v. Bowen,* 104 Md. 198, 64 A. 932

---

**4.** The original declaration was declared a nullity. Thus, the amended declaration had to be filed within the limitations period.

(1906), where a landowner learned of a tenant farmer's intention to sow a crop. The landowner had notified the farmer by letter:

> I understand that you are making preparations for sowing your fall crop which will not mature until after the expiration of your lease of the farm. * * * I do not admit that in any event you will have the right to remove any crops . . . and will stand on my rights in this matter. . . . But I particularly warn you, that I will hold you strictly to the consequences of your failure to sow grass seed. . . .

*Id.* at 200, 64 A. 932.

In the fall, after that letter was written, the landowner was in the field while the farmer was sowing the grass seed. The landowner asked the farmer how much timothy had been sowed and expressed satisfaction. The farmer then told the appellant, " 'I don't anticipate any trouble in the cutting of my crop. . . .' " *Id.* The landowner made no response. The Court of Appeals noted the landowner's concern with the sowing of grass seed:

> [H]e [the landowner] strongly implied . . . before the crops were sown, that a failure to sow grass seed would defeat the tenant's right to remove the crops after the term had ended. But the tenant did sow the grass seed, and at the very time he was putting it in the ground in accordance with the insistence of the landlord he remarked to the latter that he, the tenant, anticipated no trouble in cutting the crop he was then sowing; to which remark the landlord made no reply.
>
> . . . .
>
> It has been justly and forcibly observed that there is a negative fraud in imposing a false apprehension on another by silence *where silence is treacherously oppressive.* . . .
>
> . . . It was whilst the tenant was doing the very thing which by the terms of the letter [from the landowner] he naturally believed was the thing that entitled him to remove the crop . . . that he remarked to the landlord. . . . "I don't anticipate any trouble. . . ." *The circumstances* and the situation all clearly indicate that it was his [landlord's] duty

to speak.... He must be held to be estopped to deny what he tacitly admitted.

*Id.* at 201–07, 64 A. 932 (emphasis added).

There is an important distinction that appellee fails to make in relying on *Carmine.* When a tenant farmer tells the landowner that he is planting crops and will harvest them when they ripen some months later, all parties immediately understand that the crops cannot be harvested until they are ripe. In the case at bar, there was nothing stopping appellee or limiting his ability to file his claim with the Commission simultaneously with, or the day after, his counsel's letter to the insurer. It was unnecessary to wait to file the claim, while in *Carmine* all parties knew that the crops could not be harvested immediately—before the time expired.

In another early case, *Carroll v. Manganese Steel Safe Co.,* 111 Md. 252, 73 A. 665 (1909), the dispute involved the payment of sales commissions. In a previous transaction, Carroll had been promised "a liberal commission" for selling a steel vault. That transaction was not consummated. Subsequently, negotiations ensued between Maganese and another customer for the erection of a vault. During these negotiations, Carroll was told by Maganese's representative that if the contract price was too low, no commission could be paid. Carroll remained silent. The Court held

> that Carroll fatally estopped himself to assert his present claim by remaining silent when Lindgren told him that at the price at which the appellee could get the contract there would be no commission for either of them. His silence permitted Lindgren to go on and conclude a contract on behalf of the appellee, under circumstances when it is not reasonable to suppose he would have done so but for that silence....

*Id.* at 259, 73 A. 665.

More recently, however, the courts have subjected claims of estoppel by silence to closer scrutiny.

The claimant in the workers' compensation case of *Nazario v. Washington Adventist Hospital, Inc.,* 45 Md.App. 243, 412

A.2d 1271, *cert. denied,* 288 Md. 740 (1980), claimed that the insurer should be estopped from making a subrogation claim because it had failed to intervene in the action until after the claimant had settled the case. Nazario asserted that had he known of the insurer's intention, his settlement demand would have been higher so as to include that claim. We reiterated that "[e]quitable estoppel is applicable only where there is a duty imposed upon the party remaining silent to speak." *Id.* at 245, 412 A.2d 1271. We noted that the workers' compensation statute imposed no duty and that the insurer did not know of any lack of Nazario's knowledge as to the insurer's rights. "[T]hus the estoppel argument fails." *Id.* at 246, 412 A.2d 1271.

One of the issues involved in *Eastern Shore Warehousing, Inc. v. Wallis,* 87 Md.App. 141, 589 A.2d 497 *cert. denied,* 324 Md. 325, 597 A.2d 422 (1991), was the application of a contractual limitations period. The party claiming damage from a fire gave timely notice (sixty days) of its claim to Eastern Shore. The notice itself contained all required information. Eastern Shore representatives affirmed that the notice was complete and timely made.

The contractual arrangement, however, required that suit be filed within nine months after the notice was given to Eastern Shore. It was filed ten months later. The claimant alleged that the assurances made by Eastern Shore, that the notice was sufficient for notice purposes, caused him to overlook that the filing of suit had a contractual limitation deadline. Judge Fischer, for this Court, said:

> Ordinarily, equitable estoppel arises in cases of this nature because one party misleads the other into missing a filing deadline either by implying that the deadline has been extended or by assurances that the claim will be paid. It is clear that this did not occur here....
>
> . . . .
>
> There is nothing in the record to suggest that Leizure did or said anything that gave a false impression or misled appellees or their agent in any way. As a result, appellees

are left with the proposition that Leizure failed to advise Sharum that suit needed to be filed when Sharum asked if "everything [was] in order." ... Leizure was under no duty to volunteer to Sharum that suit needed to be filed....

. . . .

In addition, appellees cannot reasonably argue that they changed their position or course of action based upon anything Leizure said....

. . . .

... There were no conversations or correspondence between the parties relating to Dresser's obligation to bring suit within nine months. Leizure was under no duty to make Sharum aware of the requirement to bring suit ... and Leisure did nothing to lead Dresser to change its position to its detriment.

*Id.* at 147–49, 589 A.2d 497.

■ Of the cases we have reviewed, *Eastern Shore* is closest on point with the instant case, where a statute imposes no duty. There were no contractual duties created in the case *sub judice.* The insurer did nothing to cause the claimant to change his position. In fact, it appears from his failure to file that Beall was unaware of the need to file. Nor is there any evidence that the insurer knew that the filing period was about to expire prior to its recovery of the file from the dead file depository, and the file was not recovered until after the filing deadline.

In the case at bar, the estoppel argument is much weaker than that in *Eastern Shore.* The parties here were direct adversaries (to the extent adversarial relationships exist in workers' compensation cases), and there is absolutely no evidence that appellant had any knowledge that appellee was unaware of the statute of limitations—a statute of record. Additionally, the mere forwarding of a letter to the insurer in no way indicates that appellee was going to forbear filing his claim with the Commission within the five-year period. The claim could have been filed the next day, the next week.

■ We are additionally constrained to comment on whether, in an adversarial relationship, there can generally be any duty (unless expressly imposed by statute, or by the rules of discovery, procedure, or pleading) for the parties to advise the opposing parties of anticipated defenses or whether there is any requirement (unless expressly imposed by statute or rule) for one adversarial party to advise the other of weaknesses or impending weaknesses in the other's cases. Certainly, unless statutorily imposed, there is no such duty in circumstances such as exist in the present case. *See also Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 757, 599 A.2d 875 (1992), and the cases therein cited ("Mere silence will generally not raise an estoppel against a silent party.... Equitable estoppel is applicable only where there is a duty imposed upon the party remaining silent to speak."); *Impala Platinum Limited v. Impala Sales (USA), Inc.,* 283 Md. 296, 323, 389 A.2d 887 (1978).

Before concluding, we note that equitable estoppel, whether by conduct or silence, generally involves situations much more egregious than the present case. In addition to the cases heretofore mentioned, an additional sample of the cases includes: *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 545 A.2d 658 (1988), where there was a fraudulent statement (or negligent statement amounting to fraud) which served to conceal the true condition of a patient; *Bayshore Industries, Inc. v. Ziats,* 232 Md. 167, 192 A.2d 487 (1963), where the employer told the employee that if she filed a claim "you will be sorry. You will never work here again and probably nowhere around here...." *Id.* at 170, 192 A.2d 487; the often-cited case of *Chandlee v. Shockley,* 219 Md. 493, 150 A.2d 438 (1959), where the personal representative's agent expressly told the estate claimant that he would not take advantage of the delay; *Patapsco & Back Rivers Railroad Co. v. Davis,* 208 Md. 149, 117 A.2d 566 (1955), where the workers' compensation claimant was illiterate, the normal practice was for the employer to prepare claims, the employer's agent had called a meeting about payment disputes, and the employer's representative indicated that they would help the claimant get

something; *Webb v. Johnson,* 195 Md. 587, 74 A.2d 7 (1950), where the employer told the employee he would take care of matters and that the insurer would take care of him and work out a settlement; *Harrison v. McCarty,* 178 Md. 377, 13 A.2d 544 (1940), where the employer told the employee that everything was fixed up and that the employer would make the necessary reports; *Ohio Casualty Insurance Company v. Hallowell,* 94 Md.App. 444, 617 A.2d 1134 (1993), where there was an express written forbearance agreement waiving the statute of limitations; *Markert v. Beatley,* 84 Md.App. 594, 581 A.2d 445 (1990), a will caveat case where the only lawful heir, living in Germany, did not receive probate notice in time to permit a response and the opposing party was aware of the heir's attempt to file a caveat and allegations of fraud and undue influence existed; and *Sole v. Darby,* 52 Md.App. 218, 447 A.2d 506 (1982), where the offered notice of the time to file objections to the appointment of a personal representative erroneously stated a date that was already three days beyond the limitations period.

## Conclusion

We hold that the trial court erred in finding an estoppel or waiver of the bar of limitations. As there is no dispute that the statute in effect during the entire relative period required claims to be filed with the Commission and the uncontradicted evidence proved that the claim was not filed with the Commission within five years, the trial court's finding to the contrary was clearly erroneous. We shall reverse.

JUDGMENTS REVERSED; COSTS TO BE PAID BY APPELLEE.