695 A.2d 597

**Mary E. SEAL**

v.

**GIANT FOOD, INC., et al.**

**No. 1309, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

June 25, 1997.

Clifford B. Sobin (Berman, Sobin & Gross, on the brief), Gaithersburg, for Appellant.

George W. Elder and Joseph M. Jagielski, Baltimore, for Appellees.

Submitted before MOYLAN and SALMON, JJ., and PAUL E. ALPERT, J. (Retired, Specially Assigned).

SALMON, Judge.

The main issue presented in this case is whether the petition to reopen the claim filed by Mary Seal, appellant, is barred by the five-year statute of limitations set forth in section 9–736(b)(3) of the Labor and Employment Article ("LE") of the Maryland Code Annotated (1991 Repl.Vol.).[1] LE § 9–736 reads, in pertinent part:

*(b) Continuing powers and jurisdiction; modification.—* (1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment.

---

1. All references in this opinion are to the Labor and Employment Article of the Maryland Code (LE) unless otherwise specified.

(c) *Estoppel; fraud.*—(1)  If it is established that a party failed to file an application for modification of an award because of fraud or facts and circumstances amounting to an estoppel, the party shall apply for modification of an award within 1 year after:

(i)  the date of discovery of the fraud;  or

(ii)  the date when the facts and circumstances amounting to an estoppel ceased to operate.

(2)  Failure to file an application for modification in accordance with paragraph (1) of this subsection bars modification under this title.

## FACTS

On February 16, 1983, while working as a cashier for Giant Food, Inc. ("Giant"), Mary Seal sustained an accidental injury resulting in carpal tunnel syndrome.  She made a claim for her injury with the Workers' Compensation Commission, which awarded her certain temporary total and temporary partial benefits.  Additionally, on July 16, 1986, the Commission awarded Ms. Seal permanent partial disability under "other cases" amounting to "40 percent industrial loss of use of the body as a result of bilateral carpal tunnel syndrome (right hand, left hand, and right elbow) at the rate of $98 per week, with payments to begin (retroactively) on January 5, 1986, for a period of two hundred weeks."  The two-hundred week period was reduced to 165 weeks at $98 per week, due to deductions for attorney's fees and other expenses.[2]

Shortly after the Commission's order, a Claim Representative for Aetna Casualty & Surety Company ("Aetna"), who was Giant's insurer, sent a letter to Ms. Seal's attorney stating

---

2.  Two hundred weeks at $98 per week equals $19,600.  The Commission awarded Seal's attorney $3,290 in attorney's fees.  The employer/insurer paid Ms. Seal's attorney $3,290, plus $135 costs that were advanced by the attorney.  Under Workers Compensation law, these amounts may be deducted from the $19,600 payable to the claimant: $19,600, minus $3,425, equals $16,175;  $98 divided into $16,175 equals 165.051.  Therefore, the employer/insurer was required to pay the claimant over a period of slightly more than 165 weeks.

that a monthly check in the amount of $392 ($98 × 4) would be paid directly to the claimant. Counsel to Ms. Seal voiced no objection to this method of payment. Because a year has 52 weeks, paying at the monthly rate of $392 ($98 × 4) would under-pay Ms. Seal by $392 each year. Accordingly, the insurer made up this underpayment by sending Ms. Seal one additional $392 check in July of 1987 and another in July of 1988. The insurer paid Ms. Seal monthly as promised, with the last payment being made on February 14, 1989. If Aetna had paid $98 per week for 165 weeks from January 5, 1986, the last check would have been due on March 10, 1989, rather than February 14, 1989.

Ms. Seal paid a visit to her treating doctor, Raymond D. Drapkin, M.D., on January 7, 1994. Dr. Drapkin observed that she continued to have a problem with her left elbow stemming from the 1983 accident at Giant. Due to the problem noted by Dr. Drapkin, Ms. Seal, on February 25, 1994, filed a petition to reopen her claim.

Giant and Aetna (appellees), in response to Ms. Seal's petition, raised the statute of limitations set forth in LE § 9-736(b)(3) as a defense. Appellees asserted that Ms. Seal's petition was filed more than five years after the last compensation payment. A hearing was held on August 1, 1994, before Commissioner Thomas P. O'Reilly. Commissioner O'Reilly denied the petition to reopen on the ground that it was barred by the statute of limitations. Ms. Seal appealed the decision to the Circuit Court for Anne Arundel County, whereupon Giant and Aetna filed a motion for summary judgment based again on the statute of limitations. Ms. Seal filed an opposition to that motion, together with a cross-motion for summary judgment. Circuit Court Judge Elsbeth Bothe granted the motion for summary judgment filed by Aetna and Giant and denied appellant's cross-motion.

## ANALYSIS

No one disputes that appellant filed her petition to reopen more than five years after the last date compensation

was paid. Appellant points out, however, that appellees, by paying workers' compensation benefits on a monthly rather than weekly basis, paid Ms. Seal her permanent partial disability award twenty-four days too early and that, if appellees had paid benefits on a weekly basis as ordered, the last payment would have been made on March 10, and her petition to reopen on February 25, 1994, would have been timely.

Appellant points out that:

A basic rule of Compensation law in Maryland is that workers' rights or benefits may not be eliminated, modified or reduced without the explicit permission of the Workers' Compensation Commission. In the general provisions of the Act, found in Subtitle 1, the [L]egislature makes explicit this intent:

LE § 9–104(a): *Exemption from duty; waiver of right.—*

(1) Except as otherwise provided in this title, a covered employee or an employer of a covered employee may not by agreement, rule, or regulation:

(i) exempt the covered employee or the employer from a duty of the covered employee or the employer under this title; or

(ii) *waive a right of the covered employee* or the employer under this title. (2) An agreement, rule, or regulation that violates paragraph (1) of this subsection *is void to the extent of the violation.*

(Emphasis added.)

Appellant goes on to note that LE § 9–729, which governs requests by claimants for "lump sum" awards, provides that all such awards must be approved by the Commission. Appellant argues that appellees, by paying her twenty-four days early, impermissibly made a "lump sum" payment without the Commission's approval. Appellant posits that her tacit waiver of the right to be paid on a weekly basis is "void" under LE § 9–104(a)(2) and thus the time to file her motion to reopen was extended by twenty-four days.

It is true, as appellant points out, that the Commission did not give appellees the right to pay the claims monthly rather than weekly. Appellant is further correct when she characterizes the last payment as a "lump-sum" payment. Sections 9–729 and 9–730 govern when an award of compensation may be converted in whole or in part to a lump sum. Both sections require the permission of the Commission before any lump-sum payment may be made.

Paying a party monthly rather than weekly may lead, as here, to payments slightly in advance of the due date; it can lead, however, to the employer/insurer being slightly in arrears in payment. Apparently, the Commission tolerates at least some deviation on the part of workers' compensation carriers from the strict terms of Commission orders. In Richard P. Gilbert & Robert L. Humpreys, Jr., *Maryland Workers' Compensation Handbook* 155 n. 98 (1988), it is stated:

> [N]otwithstanding the use of the term "weekly," insurance carriers often pay benefits every two weeks. The Commission never formally has found fault with that practice.

The fact that the tacit agreement between appellant and appellee [to pay the compensation award monthly rather than weekly] is void does not help appellant. If we were to consider the agreement void and we were to pretend that there was no agreement to pay monthly, the fact would still remain that the last payment was made to Ms. Seal more than five years prior to the filing of the petition to reopen.

In 3 Larson's *Workmen's Compensation Law,* § 81.22(e), at 15–971 to 15–972 (1989), the pertinent statute of limitations rule is stated as follows:

> When the time of last payment of compensation is specifically identified by the statute as the key date [for reopening of an award], it controls without regard to the time or circumstances of the award. Thus, it is decisive even if the award comes later, or if the award was invalid, or if there was no award but only voluntary payment.

(Footnotes omitted.) Appellant has referred us to no case, and we have found none, creating an exception to that rule.'

In the case of *Chanticleer Skyline Room v. Greer*, 19 Md.App. 100, 107, 309 A.2d 638 (1973), *aff'd*, 271 Md. 693, 319 A.2d 802 (1974), we scrutinized article 101, section 40(c), of the Maryland Annotated Code (1957, 1964 Repl.Vol. & Supp.1973), which was substantively identical to LE § 9–736(b). In *Greer*, the claimant received, in August 1966, the last payment from a 30 percent permanent disability compensation award. *Id.* at 102, 309 A.2d 638. In 1966, the Commission awarded the claimant attorney's fees in the amount of $500, but the fee was not paid until 1970. *Id.* at 101–02, 309 A.2d 638. Claimant, on October 1, 1971, filed a petition to reopen. The Court held that payments of attorney's fees were "compensation" within the meaning of the statute, and because the last payment of compensation was made in 1970, the petition to reopen was timely. In reaching this conclusion we stated:

> Under § 40(c) the period of limitations starts to run on the date that the last payment of compensation is made, *rather than on the date such payment becomes due. Adkins v. Weisner*, 238 Md. 411, 414[, 209 A.2d 255] (1965); *Power [Porter] v. Beth.–Fair. Shipyard*, 188 Md. 668, 675[, 53 A.2d 668] (1947). Here the counsel fee was paid on 15 June 1970. *It is that date which governs, rather than the date such payment became due under either the 23 February 1966 award or the 24 March 1966 order.* Appellee's petition to reopen, filed on 3 December 1971, was timely and was not barred by the § 40(c) statute of limitations. Accordingly, the Commission should have permitted the case to be reopened.

*Id.* at 107, 309 A.2d 638 (footnotes omitted) (emphasis added).

In accordance with the holding in *Greer*, we hold that the five-year statute of limitations started to run on February 14, 1989, the date the last payment was made to appellant—not on March 10, 1989, the date payments were due.

■ Appellant, in effect, asks us to read into LE § 9–736(b) an implied tolling provision in cases where the last payment of

compensation was made prior to the due date. Statutes of limitations must be construed without resort to strained construction that belie the statute's plain meaning. *Montgomery County v. McDonald*, 317 Md. 466, 471–73, 564 A.2d 797 (1989); *Mayor of Cumberland v. Beall*, 97 Md.App. 597, 602, 631 A.2d 506 (1993). In *McDonald*, an employer failed to file a report of the employee's injury to the Commission "at once" as required by Article 101, section 26(b). The claimant, in turn, failed to file a claim with the Commission within two years from the date he suffered an occupational disease. The issue before the *McDonald* Court was whether the employer's failure to notify the Commission of injury as required by Article 101, section 26(b), tolled the two-year statute of limitations set forth in Article 101, section 26(a)(4):

> Undoubtedly the Act is to be construed liberally in favor of injured employees and to effectuate its remedial purposes, but a liberal rule of construction does not mean that courts are free to disregard the provisions comprising the Act. *See, e.g., Lockerman v. Prince George's County*, 281 Md. 195, 202 n. 5[, 377 A.2d 1177] (1977) (Although the Act is to be liberally construed, the Court is "not at liberty to disregard its clear meaning."); *Subsequent Injury Fund v. Thomas*, 275 Md. 628, 635[, 342 A.2d 671] (1975) (Although the Act "is to be liberally construed ... this does not mean that the Act should be construed to provide for compensation beyond that authorized by its provisions and purpose."); *Clement v. Minning*, 157 Md. 200, 204[, 145 A. 485] (1929) ("While it is our duty to give the [Act] a liberal interpretation, to effectuate its remedial purposes, we have no authority to apply it beyond the limits which it has prescribed.").

The foregoing rule of construction is particularly apt for the subject limitations provision.

> "[T]he general purpose of the applicable workmen's compensation act to compensate injured workers should not be used to interpret the limitations provision, because the very existence of a limitations provision in the act indicates that the [L]egislature has deliberately compromised

the general compensation purpose in the interests of the purposes served by a limitations provision."

Kelly, *Statutes of Limitations in the Era of Compensations Systems: Workmen's Compensation Limitations Provisions for Accidental Injury Claims,* 1974 Wash.U. L.Q. 541, 603.

We cannot add a purportedly intended, but omitted, tolling provision to § 26(b) through the process of statutory construction because that would change, in effect, the mandatory language "shall be forever barred" in § 26(a)(4) to the words "shall be forever extended," in cases where a report is not filed. Implying a tolling effect for the statute's reporting obligation "carries within it the fascinating possibility of an unending period for filing [a] claim, in the inevitable occasional case in which the employer has either overlooked the duty of filing the report or filed a defective one." 2B A. Larson, *The Law of Workmen's Compensation* § 78.49(b) at 15–367 (1989).

*McDonald,* 317 Md. at 472–73, 564 A.2d 797 (footnotes omitted).

■ As in *McDonald,* we cannot, under the guise of interpreting section 9–736(b)(3), hold that limitations are impliedly tolled just because appellee was paid early. Instead, section 9–736(b)(3) must be strictly construed. As the Court said in *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 475, 620 A.2d 340 (1993):

The Maryland Workers' Compensation Act's reopening provision is broad. *See Subsequent Injury Fund v. Baker,* 40 Md.App. 339, 345[, 392 A.2d 94] (1978) (characterizing Maryland's reopening provisions as "one of the broadest"). It provides that "[t]he powers and jurisdiction of the Commission over each case shall be continuing, and it may ... make such modifications or changes with respect to former findings or orders ... as in its opinion may be justified[.]" § 40(c). The Commission's power to reopen awards, however, is expressly limited with respect to the time during which it may exercise that power. Section 40(c) grants the

prior awards, but it also limits the exercise of that jurisdiction to a five-year period. After five years from the last payment of compensation, § 40(c) divests the Commission of any authority to exercise its otherwise broad reopening powers. *See Public Serv. Comm'n v. Kolb's Bakery & Dairy,* 176 Md. 191, 195[, 4 A.2d 130] (1939) (where a legislative grant of authority provides an agency with limited *jurisdiction, that grant will be strictly construed* ).

(Emphasis supplied.)

## ESTOPPEL

■ Appellant also contends that appellees acted inequitably and therefore LE § 9-736(c) (quoted above, page 89) is applicable.

Labor and Employment § 9-736(c) could only have application to a case such as this if appellant established in her opposition to appellees' motion for summary judgment that she failed to file her application for modification on time because of some act or acts on the part of the appellees. The "act" appellant points to is the payment of benefits to her twenty-four days too early. Appellant does not contend that appellees engaged in fraud. Therefore, the question arises as to whether appellees' "act" and the conditions surrounding it amount to an estoppel. The same issue was before this Court in *Stevens v. Rite-Aid Corp.,* 102 Md.App. 636, 651 A.2d 397 (1994), where Judge Getty, for this Court, summarized the pertinent precedent:

The Court of Appeals in *Bayshore Indus., Inc. v. Ziats,* 232 Md. 167[, 192 A.2d 487] (1963), addressed estoppel as follows:

Whether the doctrine of equitable estoppel should or should not be applied depends upon the facts and circumstances of each particular case, and unless the party against whom the doctrine has been invoked *has been guilty of some unconscientious, inequitable, or fraudulent act of commission or omission, upon which another has relied and has been misled to his injury,* the doctrine

will not be applied. The clear meaning is that if the converse situation exists, the doctrine may be applied.

The doctrine was invoked in *Bayshore* because the employer threatened that the employee would never work in the area again if she filed a claim. In *Webb v. Johnson*, 195 Md. 587[, 74 A.2d 7] (1949 [1950]), equitable estoppel was applied where the employer lulled the employee into a false sense of security by promising that he would be taken care of by a settlement. Conversely, the doctrine was not applied in *Beall, supra,* where counsel wrote to the insurer requesting a resumption of total disability payments for his client. The letter was written approximately six weeks before limitations expired, but the insurer did not respond until shortly after the five-year period expired. Meanwhile, a claim was filed with the Commission five days after the critical date. We denied the claim. Judge Cathell emphasized that equitable estoppel, by conduct or silence, involves situations much more egregious than the facts in *Beall.*

*Id.* at 646–47, 651 A.2d 397 (emphasis supplied).

■ Appellant did not allege in her opposition to appellees' motion for summary judgment that appellees induced her to refrain from filing a timely application for modification nor did she claim that appellees made false promises or otherwise engaged in any fraudulent conduct. This is important because the doctrine of equitable estoppel is only applicable if a party has been guilty of some "unconscientious, inequitable or fraudulent act of commission or omission" that misled appellant to her injury. Appellant did not allege that she relied on actions of appellees or that she was misled to her detriment. There was, moreover, no allegation that appellants miscalculated the start date of the five-year statute of limitations due to the fact that she received her last payment twenty-four days early. Payments of monies were made to appellant openly and with the knowledge of appellant's counsel, a well-respected attorney who was intimately familiar with the mechanics of Maryland workers' compensation law. We, therefore, conclude that

the doctrine of estoppel did not bar appellees from raising the statute of limitations as a defense.[3]

**JUDGMENT AFFIRMED; COST TO BE PAID BY APPELLANT.**

---

**3.** Even if paying too early could be deemed to constitute "facts and circumstances amounting to an estoppel" within the meaning of LE § 9–736(c), the facts and circumstances "ceased to operate" on February 12, 1989, when the insurer made its last payment. February 12, 1989, was the last date when appellant contends appellees committed any "wrongful act." Appellant knew about the "wrongful act" on the date she received her last check. If a party fails to file for modification within one year after the "facts and circumstances amounting to an estoppel" cease to exist, a party is thereafter barred from filing for modification. Here, appellant filed her application for modification almost five years after the last payment was made. Therefore, the application was barred even if paying too early could somehow be deemed to be an action that would otherwise estop appellees from raising a limitations defense.